SUSANIN, WIDMAN & BRENNAN, P.C.
By: Elizabeth K. Schlax, Esq. (ID No. 901272012)
eschlax@swbcounsellors.com
John H. Widman, Esq. (admitted *Pro Hac Vice*)
jwidman@swbcounsellors.com
656 E. Swedesford Rd., Suite 330
Wayne, PA 19087
(610) 710-4510
Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| George R. Laufenberg | : |
| | : |
| Plaintiff, | : |
| | : Civil Action No. 2:17-cv-01200 |
| v. | : |
| | : |
| Northeast Carpenters Pension Fund, | : |
| Northeast Carpenters Annuity Fund, | : |
| Northeast Carpenters Health Fund, | : |
| Northeast Carpenters Apprentice Fund, | : |
| and | : |
| The Board of Trustees for the Northeast | : |
| Carpenters Pension, Annuity, Health & | : |
| Apprentice Funds | : |
| | : |
| Defendants. | : |
| | : |

**ANSWER TO SECOND AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES
AND AMENDED COUNTERCLAIMS**

By and through its undersigned attorneys, the Northeast Carpenters Pension

Fund, the Northeast Carpenters Annuity Fund, the Northeast Carpenters Health Fund,

and the Northeast Carpenters Apprentice Fund (collectively, the "Benefit Fund

Defendants"),[1] and the Trustees thereof (the "Trustee Defendants") hereby file this Answer to the Second Amended Complaint with Affirmative Defenses and Counterclaims.

The numbered paragraphs of the Answer correspond to the numbered paragraphs of the Second Amended Complaint.

## JURISDICTION AND VENUE

1.      Denied. Plaintiff has sold the residence listed at this address and now resides at a different address. See Certification of Peter Till at ¶ 22.

2.      Denied as stated. It is admitted only that the Benefit Fund Defendants have their principal offices at Raritan Plaza II, 91 Fieldcrest Ave., 3d. Fl., Edison, NJ 08837.

## PARTIES

3.      The averments of paragraph 3 are conclusions of law to which no response is required.

4.      Denied. To the contrary, Plaintiff's pleadings of record in this litigation admit that he attained age 65 in or about September 2015, and used his authority as Administrator of the New Jersey Carpenters Pension Fund ("NJ Pension Fund") to cause the NJ Pension Fund to begin the distribution of his monthly pension ($9,689)[2] (hereinafter "Base Pension") in October 2015, even though he continued to work for the NJ Pension Fund and the other NJ Funds as the full-time Administrator, without seeking or obtaining the approval of the Board of Trustees. See Second Amended Complaint at ¶ 23. The distribution of Plaintiff's Base Pension while he continued to serve as the full-time

---

[1] On January 1, 2016 (hereinafter, "the Merger Date"), the New Jersey Carpenters Pension, Annuity, Health, and Apprentice Funds merged with the Empire Carpenters Pension, Annuity, Health, and Apprentice Funds to form the Northeast Carpenters Pension, Annuity, Health, and Apprentice Funds, respectively.

[2] As of January 1, 2017, Plaintiff's Base Pension was adjusted to $10,074.

Administrator of the NJ Pension Fund violated the express terms of the NJ Pension Fund Plan Document, (the "NJ Pension Plan") and post-Merger Date, the Northeast Carpenters Pension Plan Document, (the "Northeast Pension Plan"), which required Plaintiff to "permanently cease" his employment to be eligible for distribution of his Base Pension. By way of further response, after the Board of Trustees terminated Plaintiff's employment for cause, the Board approved the distribution of Plaintiff's Base Pension beginning January 2017, but without waiver of the Pension Fund's right to a set-off against Plaintiff's Base Pension equal to the amount of Base Pension payments that Plaintiff impermissibly received from October 2015 through December 2016. It is further denied that Plaintiff applied for the distribution of his Annuity Plan account balance in December 2016. To the contrary, Plaintiff requested distribution of a portion of his Annuity Plan account balance in or about February 2017. In response to that application, the Trustee Defendants voted unanimously to suspend distributions from his Annuity account balance pending Plaintiff's restitution to the Benefit Fund Defendants of amounts Plaintiff owes under Section 409 of the Employee Retirement Income Security Act of 1974 ("ERISA") as a result of the losses caused by Plaintiff's self-dealing transactions and other breaches of fiduciary responsibility.

5.     Denied. It is admitted that Plaintiff served the Trustee Defendants in the capacity of Administrator of the Benefit Fund Defendants until his employment was terminated for cause effective December 23, 2016, based upon Plaintiff's admissions to the Co-Chairmen of the Board of Trustees that he engaged in numerous and substantial self-dealing transactions with Benefit Fund assets in violation of ERISA and other fiduciary misconduct.

6.      Denied. It is admitted only that Plaintiff was party to a series of "Employment Agreements" with the NJ Pension Fund.[3] The latest fully-stated version of the Employment Agreement was entered into by and between Plaintiff and the Trustees of the NJ Pension Fund on November 17, 1998 (the "1998 Agreement"). The 1998 Agreement confirmed Plaintiff's engagement as Administrative Manager for the New Jersey Funds until December 31, 2005, but allowed for the severance of his employment prior to that date, "*regardless of cause*". The 1998 Agreement promised Plaintiff *inter alia*, a supplement to his pension ("Pension Supplement") provided by the NJ Pension Plan payable upon retirement and equal to 4% of his average monthly compensation received during the three consecutive years of employment at his highest compensation multiplied by his years of employment (and fraction thereof) beginning March 1, 1984, less the portion of his monthly pension received from the NJ Pension Fund ("Base Pension") attributable to years of service under the rules of such Pension Fund after March 1, 1984.  In 2005, the Co-Chairmen of the Board of Trustees for the NJ Pension Fund and the Plaintiff entered into a summary agreement amending the 1998 Agreement to confirm that the combination of Plaintiff's Pension Supplement and his Base Pension would be capped at 100% of his annual salary.

7.      The averments of paragraph 7 are conclusions of law to which no response is required.

---

[3] The Employment Agreements include: (i) an agreement by and between Plaintiff and the Trustees of the NJ Pension Fund dated June 19, 1985; (ii) an agreement between the same parties dated February 6, 1990; (iii) an agreement between the same parties dated October 1993; (iv) an agreement between the same parties dated November 17, 1998; and (v) a 2005 amendment to the 1998 agreement. Plaintiff has inexplicably failed to attach Employment Agreements (or any other exhibits) to his Complaint. Accordingly, the Employment Agreements are attached hereto as Exhibit A.

8.     Denied. Defendants' response to paragraph 4 of the Second Amended Complaint is incorporated herein by reference.

9.     Denied as stated. It is admitted only that Plaintiff was a participant in the Benefit Fund Defendants as an employee of the NJ Pension Fund and, after the Merger Date, the Northeast Carpenters Health Fund.

10.     Denied as stated. It is admitted only that the New Jersey Carpenters Annuity Fund was established pursuant to a 1982 Agreement and Declaration of Trust. Effective January 1, 2016, by reason of a merger of the Empire State Carpenters Annuity Fund into the New Jersey Carpenters Annuity Fund, the New Jersey Carpenters Annuity Fund was re-named the Northeast Carpenters Annuity Fund and the Agreement and Declaration of Trust was restated as of January 1, 2016.

11.     Denied as stated. It is admitted only that the Northeast Carpenters Annuity Fund is a defined contribution plan that provides retirement, deferred compensation, disability retirement, and termination of employment benefits to participants and beneficiaries and that Plaintiff was a participant in the Annuity Plan and was entitled to benefits according to the terms of the Annuity Plan.

12.     Denied.  The Northeast Carpenters Funds do not include an entity known as the Additional Security Benefit Fund ("ASB Fund") and no such entity was included in the NJ Carpenters Funds.

13.     Denied. The response to paragraph 12 is incorporated herein by reference.

14.     Denied as stated. It is admitted only that the Northeast Carpenters Pension Fund, Northeast Carpenters Annuity Fund, the Northeast Carpenters Health Fund and the Northeast Carpenters Apprenticeship Fund (collectively referred to as the "Northeast

Carpenters Funds") are Taft-Hartley multiemployer employee benefit plans within the meaning of ERISA and are established and maintained pursuant to separate Agreements and Declarations of Trust ("Trust Agreements"), effective January 1, 2016 entered into by and among: (i) the Northeast Regional Council of Carpenters ("Union"), a labor organization which serves as the collective bargaining representative for carpenters who are employed in New Jersey and New York State; and (ii) various employer associations ("Associations") that negotiate and enter into collective bargaining agreements within the jurisdiction of the Union on behalf of their signatory contractor members, which collective bargaining agreements require contributions to the Northeast Carpenters Funds.  By way of further response, the Northeast Carpenters Health Fund provides hospitalization, surgical, medical, and other related health benefits to the participants and their beneficiaries; the Northeast Carpenters Pension Fund provides defined benefit pension payments after retirement; the Annuity Fund provides money purchase and profit sharing defined contribution benefits upon retirement, separation from service, and on other occasions described in the Annuity Plan Document; and the Northeast Carpenters Apprenticeship Fund is a multiemployer benefit plan that provides for apprenticeship instruction and journeyperson skills training and education for bargaining unit carpenters covered by the collective bargaining agreements.

15.    Denied as stated. The response to paragraph 14 is incorporated herein by reference. It is admitted only that the Union is a labor organization which serves, *inter alia,* as the collective bargaining representative for carpenters who are employed by signatory contractors in New Jersey and New York State.

6

16.     The averments of paragraph 16 are conclusions of law to which no response is required. By way of further response, denied. Plaintiff, the Benefit Fund Defendants, and the Trustee Defendants are all citizens of the state of New Jersey.

17.     The averments of paragraph 17 are conclusions of law to which no response is required.

18.     The averments of paragraph 18 are conclusions of law to which no response is required.

19.     The averments of paragraph 19 are conclusions of law to which no response is required.

## NATURE OF THE ACTION

20.     The averments of paragraph 20 are conclusions of law to which no response is required.

21.     The averments of paragraph 21 are conclusions of law to which no response is required.  By way of further response, the averments of this Answer with Affirmative Defenses and Counterclaims are incorporated herein by reference.

22.     Admitted, save that Co-Chairmen Dave Haines also attended the meeting.

23.     Denied, save that it is admitted that Trustees Ballantyne, DeLollis, Kocsis, and Haines requested a meeting with Plaintiff along with co-counsel Widman and Kroll. By way of further response, Plaintiff admitted to the participants in the meeting that, once he attained age 65 (in or about September 2015), he unilaterally concluded that he was entitled to begin collecting his Base Pension ($9,689 per month)[4] even though he continued to work for the NJ Pension Fund and the other NJ Funds as the full-time

---

[4] As of January 1, 2017, Plaintiff's Base Pension was adjusted to $10,074.

Administrator, and used his authority as Administrator to cause the NJ Pension Fund to begin the distribution of his Base Pension in October 2015, without seeking or obtaining the approval of the Board of Trustees.   Plaintiff also admitted to the participants in the meeting that he unilaterally construed his Employment Agreements to entitle him to a Pension Supplement in the amount of $14,729 per month, and used his authority as Administrator to cause the NJ Pension Fund to begin the distribution of the Pension Supplement on October 1, 2015.  Plaintiff admitted that he did not seek or obtain the approval of the Board with respect to the amount of the Pension Supplement or his right to receive it while he was still employed by the NJ Carpenters Pension Fund and the other NJ Carpenters Funds.  Plaintiff also admitted to the participants in the meeting that for many years, he used his authority as Administrator of the NJ Pension Plan to unilaterally increase his monthly pay by the amount of contributions that should have been made by the NJ Pension Fund to the NJ Annuity Fund on his behalf under his Employment Agreements *plus* an amount equal to the amount of contributions that *would not have been made* to the Annuity Fund because of the cap imposed by Section 401(a)(17) of the Internal Revenue Code.   Plaintiff admitted that he neither sought nor obtained the approval of the Boards of Trustees to redirect those contributions into his pay or to enhance that amount by the amount that would have been capped by operation of IRC Section 401(a)(17).  See also, Second Amended Complaint at ¶ 25.

24.    Denied, save that it is admitted only that Plaintiff was advised that the conduct described in paragraph 23 above constituted self-dealing with ERISA plan assets in violation of ERISA Sections 404 and 406(b), and that Plaintiff must immediately correct those transactions pursuant to ERISA Section 409.

25.    Denied, save that it is admitted that Plaintiff admitted to the conduct described in paragraph 23 above but incorrectly noted that the conduct began in or about 2001.  As set forth below, the conduct began in or around 1997.

26.    Denied as stated. The response to paragraph 24 is incorporated herein by reference.

27.    Denied. Plaintiff did admit that he only discussed the collection of his Base Pension and Pension Supplement with Evangelista but acknowledged that neither he nor any agent or representative of Plaintiff, including Evangelista, advised the Board of Trustees or co-counsel that Plaintiff was going to commence the distribution of his Base Pension or his Pension Supplement on October 1, 2015, despite conducting two meetings of the Board of Trustees in September of 2015.

28.    Denied.   The responses to paragraphs 23 through 27 are incorporated herein by reference.

29.    Denied.   To the contrary, at the December 20, 2016 meeting, Widman advised Plaintiff that Evangelista asked two attorneys in Widman's office whether Plaintiff could be taxed for having *constructive receipt* of the Pension Supplement under IRC §409A. Evangelista failed to advise the attorneys that the constructive receipt doctrine would not apply on and after October 1, 2015, because Plaintiff was going to take his Base Pension and Pension Supplement. It is further averred that both Plaintiff and Evangelista attended both Trustee meetings in September of 2015 and neither disclosed to the Trustees that Plaintiff was going to take his Base Pension and Pension Supplement in violation of the NJ Pension Plan language and the language of Plaintiff's Employment Agreements.

30.    Denied, save it is admitted that Plaintiff asked for a written description of the transactions described in paragraph 23 of this Answer.

31.    Denied. By way of further response, the December 21, 2016 letter is a document which speaks for itself. The contents of that letter (attached hereto as Exhibit B), are incorporated herein by reference.

32.    Denied.  By way of further response, the averments set forth conclusions of law to which no responsive pleading is required.  Furthermore, the Trustee Defendants had the right to terminate Plaintiff's employment with or without cause, at any time, and were required as fiduciaries to terminate Plaintiff's employment once Plaintiff admitted to the self-dealing transactions described in paragraph 23.

33.    Denied, save it is admitted that Plaintiff ultimately did not agree to the retirement option described in Exhibit B.

34.    Denied as stated. It is admitted that Plaintiff and Widman did speak by phone regarding Plaintiff's decision as requested in the December 21, 2016 letter.

35.    Denied as stated. By way of further response, Plaintiff was advised at the December 20, 2016 meeting and thereafter that he should consult with competent legal counsel well-versed in ERISA matters.

36.    Denied as stated. Plaintiff called co-counsel and advised him that he would not agree to retire. Plaintiff was advised that the Board of Trustees did not want him to return to work on Friday, December 23, 2016.

37.    Denied. Plaintiff's employment was terminated effective December 23, 2016.

38.     Denied. It is admitted only that the Board of Trustees suspended the payment of the Pension Supplement effective December 20, 2016, in light of Plaintiff's admissions of self-dealing transactions, including with respect to distribution of the Pension Supplement, and pending further review of the enforceability of the Employment Agreements and the legality of the Pension Supplement, as well as this Court's approval of a set off against the Pension Supplement. The remaining averments are conclusions of law and are deemed denied.

39.     Denied. It is admitted only that, pursuant to ERISA §206(d)(4), the Trustees suspended the distribution of Plaintiff's Annuity Account pending Plaintiff's correction of Plaintiff's self-dealing transactions involving the assets of the Northeast Carpenters Pension Fund and the Northeast Carpenters Annuity Fund, the amount of which exceeded the amount of Plaintiff's Annuity Account. By way of further response, a true and correct copy of a February 22, 2017 letter advising of the Trustees' suspension decision is attached as Exhibit C. Plaintiff judicially admitted that he was advised of the same in or about February 2017. See Certification of Peter Till at ¶ 9. The remaining averments are conclusions of law which are deemed denied.

40.     Denied.  Plaintiff was not entitled to further salary or benefits after he was fired for his repeated and egregious violations of his duties of loyalty and care as described in the responses to paragraphs 1 through 39 above, which are incorporated herein by reference.  By way of further response, Plaintiff's Base Pension is in pay status. Plaintiff's Pension Supplement has been suspended because: (i) it is enforceable under ERISA in light of his egregious and repeated acts of self-dealing and other breaches of his fiduciary duties as described below; (ii) when he negotiated increases to his salary,

11

Plaintiff intentionally concealed the actuarial reports of the value of his Pension Supplement which he solicited and received from the Pension Fund's actuary, and failed even to disclose the existence of his Employment Agreements to new Trustees, all of which breached his fiduciary duties of loyalty and care and caused the value of his Pension Supplement to grow to an excessive amount; and (iii) in order to recoup the admitted losses to the Benefit Funds caused by Plaintiff's unauthorized payment of Plaintiff's Base Pension and Pension Supplement from October 2015 through December 2016, as well as the other losses caused by Plaintiff's self-dealing and other breaches of his fiduciary duties of care and loyalty as detailed below.

41.    After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 41 of the Second Amended Complaint.

42.    After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 42 of the Second Amended Complaint.

43.    After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 43 of the Second Amended Complaint.

44.    Denied. At no time did Trustee Ballantyne or any other Trustee engage in the conduct described in paragraph 44 of the Second Amended Complaint or otherwise publish, cause to be published, or otherwise make false statements regarding Plaintiff. By way of further response, the averments of paragraph 44 of the Second Amended Complaint are conclusions of law which are deemed denied.

12

45.     Denied. Defendants' response to paragraph 44 of the Second Amended Complaint is incorporated herein by reference. By way of further response, the averments of paragraph 45 of the Second Amended Complaint are conclusions of law which are deemed denied.

46.     Denied. Defendants' responses to paragraphs 21 through 40 of the Second Amended Complaint are incorporated herein by reference. By way of further response, in the December 20, 2016 meeting, Plaintiff expressly admitted to the self-dealing transactions, as described above, and has affirmed and reasserted those admissions in his pleadings before this Court. See Second Amended Complaint ¶¶ 23- 28.

47.     Denied. Defendants' response to paragraphs 21 through 46 are incorporated herein by reference.

48.     Denied. Plaintiff's Base Pension (effective January 1, 2017, $10,074) has not been frozen, suspended, or otherwise disrupted.  By way of further response, Defendants' responses to paragraphs 21 through 46 of the Second Amended Complaint are incorporated herein by reference.

49.     Denied as stated. It is admitted only that Plaintiff's employment with the New Jersey Carpenters Benefit Funds began in or about 1984. By way of further response, after discovery on or about December 6, 2016 by the Funds' auditor, at the December 20, 2016 meeting, Plaintiff expressly admitted to the self-dealing transactions described above.

50.     Denied. Defendants' response to paragraph 49 is incorporated herein by reference.

51.     Denied. By way of further response, the Funds' prior auditor, Moore Stephens, P.C. and its principals, Joseph Corcoran and David Evangelista, were aware of Plaintiff's self-dealing transactions and other breaches of fiduciary duty later discovered by the Funds' subsequent auditor, James Heinzman. No agent or representative of Moore Stephens, P.C., including Joseph Corcoran and David Evangelista ever advised the Trustee Defendants of Plaintiff's self-dealing transactions or other breaches of fiduciary duties of care and loyalty as described herein.

52.     Denied. The averments of paragraph 52 of the Second Amended Complaint are conclusions of law which are deemed denied. By way of further response, Plaintiff's Employment Agreements provide the Board of Trustees the right to terminate the agreement at any time, with or without cause, and therefore, there is no guaranteed term of the Agreements. By way of further response, the Trustee Defendants had a fiduciary duty to terminate Plaintiff's employment, including discontinue payment pursuant to the Employment Agreements based on Plaintiff's admissions of self-dealing transactions and to recoup additional losses discovered after Plaintiff's termination arising from further breaches of fiduciary duty. Defendants' response to paragraph 6 and 21 through 40 of the Second Amended Complaint are incorporated herein by reference.

53.     Denied. The response to paragraph 52 is incorporated herein by reference. Furthermore, prior to 2009, the Trustees awarded Fund Office staff a holiday bonus, pursuant to a schedule based on years of service. Notwithstanding, in each of the years 1998 through 2003, Plaintiff unilaterally and without prior authorization, awarded himself extra holiday bonuses. Holiday bonuses are subject to approval by the Board of Trustees, and Plaintiff is not entitled to a guaranteed holiday bonus. By way of further response, the

averments of paragraphs 21 through 40 of this Answer are incorporated herein by reference. The remaining averments of paragraph 53 of the Second Amended Complaint are conclusions of law to which no response is required.

54.    Denied. By way of further response, Defendants' responses to paragraphs 21 through 53 of the Second Amended Complaint are incorporated herein by reference. The remaining averments are conclusions of law which are deemed denied.

55.    Denied. The Employment Agreements are writings which speak for themselves.  By way of further response, Defendants' responses to paragraph 23 through 54 of the Second Amended Complaint are incorporated herein by reference.

56.    Denied. Plaintiff continues to receive his Base Pension (effective January 1, 2017, $10,074). It is admitted only that Plaintiff's Pension Supplement ($14,729) has been suspended pending this Court's review of the enforceability and reasonableness of that payment as well as this Court's approval of a set-off against the Pension Supplement, for the reasons set forth above and below.  By way of further response, neither the Employment Agreements nor the Pension Supplement provisions in those Agreements constitute an ERISA plan, and therefore there are no applicable administrative remedies. Defense counsel has never made any representations to Plaintiff or his counsel regarding Plaintiff's eligibility for payment of his Pension Supplement. Defendants' responses to paragraphs 23 through 53 of the Second Amended Complaint are incorporated herein by reference. The remaining averments are conclusions of law which are deemed denied.

57.    It is admitted only that the Base Pension is being paid.  The remaining averments are denied. By way of further response, Defendants' responses to paragraphs

23 through 56 of the Second Amended Complaint are incorporated herein by reference. The remaining averments are conclusions of law which are deemed denied.

58.     Denied. The responses to paragraphs 23 through 57 are incorporated herein by reference.  By way of further response, Plaintiff has judicially admitted that he was advised in or about February 2016 that the Trustee Defendants unanimously voted to suspend distribution of Plaintiff's Annuity Account balance in light of Plaintiff's admitted self-dealing transactions and other breaches of fiduciary duty and pending restitution to the Benefit Funds of the losses caused thereby. <u>See</u> Certification of Peter Till at ¶ 9.  The remaining averments are conclusions of law which are deemed denied.

59.     Denied. Defendants' responses to paragraphs 23 through 58 of the Second Amended Complaint are incorporated herein by reference.  By way of further response, paragraph 59 asserts conclusions of law which are deemed denied.

60.     Denied. Defendants' responses to paragraphs 23 through 58 of the Second Amended Complaint are incorporated herein by reference. By way of further response, paragraph 60 asserts conclusions of law which are deemed denied.

## **FIRST COUNT**

### **Breach of Fiduciary Duty (ERISA §502(a)(2) and §502(a)(3))**

61.     Defendants' responses to paragraphs 1 through 60 of the Second Amended Complaint are incorporated herein by reference.

62.     The averments of paragraph 62 are conclusions of law which are deemed denied.

63.    The averments of paragraph 63 are conclusions of law which are deemed denied. By way of further response, the Northeast Pension Plan and the Northeast Carpenters Annuity Plan are writings which speak for themselves.

64.    Denied. Defendants' responses to paragraphs 21 through 56 of the Second Amended Complaint are incorporated herein by reference. By way of further response, the Board of Trustees' action in suspending the distribution of Plaintiff's Annuity Account balance is authorized by ERISA Section 206(d)(4). The remaining averments of paragraph 64 are conclusions of law which are deemed denied.

65.    Denied. Defendants' response to paragraph 64 is incorporated herein by reference. By way of further response, the averments of paragraph 65 are conclusions of law which are deemed denied.

WHEREFORE, Defendants request that this Court enter judgment for the Defendants and against Plaintiff, dismissing the First Count with prejudice, and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

### SECOND COUNT
### Breach of Fiduciary Duty (ERISA §503)

66.    Defendants' responses to paragraphs 1 through 65 of the Second Amended Complaint are incorporated herein by reference.

67.    The averments of paragraph 67 are conclusions of law which are deemed denied.

68.    The averments of paragraph 68 are conclusions of law which are deemed denied.

69.     The averments of paragraph 69 are conclusions of law which are deemed denied.

70.     Denied.  Defendants' responses to paragraph 23 through 64 are incorporated herein by reference.   By way of further response, the averments of paragraph 70 are conclusions of law which are deemed denied.

71.     Denied.  Defendants' responses to paragraphs 23 through 64 of the Second Amended Complaint are incorporated herein by reference.  By way of further response, the averments of paragraph 71 are conclusions of law which are deemed denied.

72.     The averments of paragraph 72 are conclusions of law which are deemed denied.

73.     Denied.  Defendants' responses to paragraphs 23 through 64 of the Second Amended Complaint are incorporated herein by reference.  By way of further response, the averments of paragraph 73 are conclusions of law which are deemed denied.

74.     The averments of paragraph 74 are conclusions of law which are deemed denied.

WHEREFORE, Defendants request that this Court enter judgment for the Defendants and against Plaintiff, dismissing the Second Count with prejudice and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

### THIRD COUNT
### Failure to Exhaust Administrative Remedies

75.     Defendants' responses to paragraphs 1 through 74 of the Second Amended Complaint are incorporated herein by reference.

76.     The averments of paragraph 76 are conclusions of law which are deemed denied.

77.     The averments of paragraph 77 are conclusions of law which are deemed denied. It is admitted only that the New Jersey Carpenters Pension, Annuity, Health and Apprentice and Training Funds, and, post-Merger Date, the Northeast Carpenters Pension, Annuity, Health and Apprentice and Training Funds, were protected from theft and disloyalty by a fidelity bond.

78.     Denied, save that it is admitted that the Funds were and are covered by fiduciary insurance policies.

79.     The averments of paragraph 79 are conclusions of law which are deemed denied.

## FOURTH COUNT
### Failure to Maintain and Honor Medical Coverages

80.     Defendants' responses to paragraphs 1 through 79 of the Second Amended Complaint are incorporated herein by reference.

81.     Paragraph 81 of the Second Amended Complaint asserts conclusions of law which are deemed denied. It is admitted only that Plaintiff was, at some time, a member of the Northeast Carpenters' Union ("Union"). The remaining averments are denied. By way of further response, by letter dated February 22, 2017, the Trustees confirmed to Plaintiff he is not eligible for retiree health coverage under the Northeast Carpenters Health Plan. See Exhibit C. A subsequent letter to Plaintiff dated March 3, 2017, confirmed to Plaintiff that he could elect COBRA coverage and Plaintiff may use his Health Reimbursement Account balance to pay COBRA premiums, even though Plaintiff was terminated for willful misconduct and therefore not eligible for COBRA

continuation coverage. A true and correct copy of the March 3, 2017 letter is attached hereto as Exhibit D. Plaintiff did in fact elect COBRA coverage for himself and for his spouse.

82.     Denied. The response to paragraph 81 is incorporated herein by reference. By way of further response, the averments of paragraph 82 are conclusions of law which are deemed denied.

83.     Denied. The response to paragraph 81 is incorporated herein by reference. By way of further response, the averments of paragraph 83 are conclusions of law which are deemed denied.

84.     Denied. The response to paragraph 81 is incorporated herein by reference. By way of further response, the averments of paragraph 84 are conclusions of law which are deemed denied.

85.     Denied. Plaintiff is currently receiving continued coverage pursuant to COBRA as described in the response to paragraph 81, which is incorporated herein by reference.  By way of further response, the averments of paragraph 85 are conclusions of law which are deemed denied.

86.     Denied. The response to paragraph 85 is incorporated herein by reference. By way of further response, Plaintiff has been offered the use of the balance of his Health Reimbursement Account to make COBRA premium payments, as described in the response to paragraph 81, which is incorporated herein by reference.  By way of further response, the averments of paragraph 86 are conclusions of law which are deemed denied.

WHEREFORE, Defendants request that this Court enter judgment for the Defendants and against Plaintiff, dismissing the Fourth Count with prejudice and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

## FIFTH COUNT

### Fraud

87.     Defendants' responses to paragraphs 1 through 86 of the Second Amended Complaint are incorporated herein by reference.

88.     To the extent the averment refers to the Employment Agreements, the averment is denied in that the Employment Agreements are writings which speak for themselves. To the extent the averment refers to the discussions between Plaintiff and the Trustee Defendants regarding their decision to remove Plaintiff from the position of Administrator, terminate his employment, and demand restitution of all of the losses caused to the NJ Carpenters Funds and the Northeast Carpenters Funds by Plaintiff's repeated and egregious breaches of his fiduciary duties of care and loyalty as described herein, it is admitted that the Trustee Defendants intended for Plaintiff to rely upon those representations as communicated to him. Paragraph 88 of the Second Amended Complaint is otherwise denied.

89.     Denied. The responses to paragraphs 23 through 88 are incorporated herein by reference.  By way of further response, the averments of paragraph 89 are conclusions of law which are deemed denied.

90.     Denied. The responses to paragraphs 23 through 88 are incorporated herein by reference.  By way of further response, the averments of paragraph 90 are conclusions of law which are deemed denied.

21

91.     Denied.  Defendants' responses to paragraphs 23 through 88 of the Second Amended Complaint are incorporated herein by reference. By way of further response, the averments of paragraph 91 of the Second Amended Complaint are conclusions of law which are deemed denied.

WHEREFORE, Defendants request that this Court enter judgment for the Defendants and against Plaintiff, dismissing the Fifth Count with prejudice and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

## SIXTH COUNT

### Equitable Fraud

92.     Defendants' responses to paragraphs 1 through 91 of the Second Amended Complaint are incorporated herein by reference.

93.     Defendants' responses to paragraphs 88 through 91 of the Second Amended Complaint are incorporated herein by reference.

94.     Defendants' responses to paragraphs 88 through 91 of the Second Amended Complaint are incorporated herein by reference.

95.     Defendants' responses to paragraphs 88 through 91 of the Second Amended Complaint are incorporated herein by reference.

96.     Defendants' responses to paragraphs 88 through 91 of the Second Amended Complaint are incorporated herein by reference.

WHEREFORE, Defendants request that this Court enter judgment for the Defendants and against Plaintiff, dismissing the Sixth Count with prejudice and awarding

Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

## SEVENTH COUNT

### Negligent Misrepresentation

97.    Defendants' responses to paragraphs 1 through 96 of the Second Amended Complaint are incorporated herein by reference.

98.    Defendants' responses to paragraphs 88 through 91 the Second Amended Complaint are incorporated herein by reference.

99.    Defendants' responses to paragraphs 88 through 91 of the Second Amended Complaint are incorporated herein by reference.

100.    Defendants' responses to paragraphs 88 through 91 of the Second Amended Complaint are incorporated herein by reference.

101.    Defendants' responses to paragraphs 88 through 91 of the Second Amended Complaint are incorporated herein by reference.

102.    Defendants' responses to paragraphs 88 through 91 of the Second Amended Complaint are incorporated herein by reference.

WHEREFORE, Defendants request this Court enter judgment for the Defendants and against Plaintiff, dismissing the Seventh Count with prejudice and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

## EIGHTH COUNT

### Unjust Enrichment

103.   Defendants' responses to paragraph 1 through 102 of the Second Amended Complaint are incorporated herein by reference.

104.   Denied.   Defendants' responses to paragraphs 23 through 101 of the Second Amended Complaint are incorporated herein by reference.   By way of further response, the averments of paragraph 104 of the Second Amended Complaint are conclusions of law which are deemed denied.

105.   Denied.   Defendants' responses to paragraphs 23 through 101 of the Second Amended Complaint are incorporated herein by reference.   By way of further response, the averments of paragraph 105 of the Second Amended Complaint are conclusions of law which are deemed denied.

106.   Denied.   Defendants' responses to paragraphs 23 through 101 of the Second Amended Complaint are incorporated herein by reference.   By way of further response, the averments of paragraph 106 of the Second Amended Complaint are conclusions of law which are deemed denied.

WHEREFORE, Defendants request that this Court enter judgment for the Defendants and against Plaintiff, dismissing the Eighth Count with prejudice and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

## **NINTH COUNT**

### **Breach of Contract**

107.   Defendants' responses to paragraphs 1 through 106 of the Second Amended Complaint are incorporated herein by reference.

24

108.   Denied.  Defendants' responses to paragraphs 23 through 101 of the Second Amended Complaint are incorporated herein by reference.   By way of further response, it is specifically denied that either the Northeast Pension Fund or the Northeast Carpenters Health Fund was party to or bound by the Employment Agreements. As of January 1, 2016, the NJ Pension Fund ceased to exist, and Plaintiff failed to disclose the existence of the Employment Agreements or ensure that the Merger Agreement between the NJ Pension Fund and the Empire Carpenters Pension Fund required the Northeast Pension Fund or the Northeast Carpenters Health Fund to assume and become bound by the Employment Agreements.

109.   Denied.  Defendants incorporate their responses to paragraphs 23 through 106 of the Second Amended Complaint.  By way of further response, paragraph 109 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

110.   Denied.   Defendants' responses to paragraphs 23 through 108 of the Second Amended Complaint are incorporated herein by reference.   By way of further response, paragraph 110 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

WHEREFORE, Defendants request this Court enter judgment for the Defendants and against Plaintiff, dismissing the Ninth Count with prejudice and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

## TENTH COUNT

## Common Law Fraud

111.   Defendants' responses to paragraphs 1 through 110 of the Second Amended Complaint are incorporated herein by reference.

112.   Denied.   Defendants' responses to paragraphs 23 through 109 of the Second Amended Complaint are incorporated herein by reference.   By way of further response, paragraph 112 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

113.   Denied.   Defendants' responses to paragraphs 23 through 109 of the Second Amended Complaint are incorporated herein by reference.   By way of further response, paragraph 113 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

114.   Denied. Defendants' responses to paragraphs 23 through 109 of the Second Amended Complaint are incorporated herein by reference.

115.   Denied. Defendants' responses to paragraphs 23 through 109 of the Second Amended Complaint are incorporated herein by reference.   By way of further response, paragraph 115 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

116.   Denied. Defendants' responses to paragraphs 23 through 109 of the Second Amended Complaint are incorporated herein by reference.   By way of further response, paragraph 116 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

117.   Denied.   Defendants' responses to paragraphs 23 through 109 of the Second Amended Complaint are incorporated herein by reference.   By way of further

response, paragraph 117 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

118.   Denied.  Defendants' responses to paragraphs 23 through 109 and paragraph 113 of the Second Amended Complaint are incorporated herein by reference.

119.   Denied.   Defendants' responses to paragraphs 23 through 109 of the Second Amended Complaint are incorporated herein by reference.   By way of further response, paragraph 119 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

120.   Denied. Defendants' responses to paragraphs 23 through 109 of the Second Amended Complaint are incorporated herein by reference.

121.   Denied. Defendants' responses to paragraphs 23 through 109 of the Second Amended Complaint are incorporated herein by reference. By way of further response, paragraph 121 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

122.   Denied.   Defendants' responses to paragraphs 23 through 109 of the Second Amended Complaint are incorporated herein by reference. By way of further response, paragraph 122 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

WHEREFORE, Defendants request that this Court enter judgment for the Defendants and against Plaintiff, dismissing the Tenth Count with prejudice and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

## ELEVENTH COUNT

### Conversion

123.    Defendants' responses to paragraphs 1 through 122 of the Second Amended Complaint are incorporated herein by reference.

124.    Denied.  Defendants' responses to paragraphs 23 through paragraph 113 of the Second Amended Complaint are incorporated herein by reference.  By way of further response, paragraph 124 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

125.    Denied. To the contrary, Defendants have provided Plaintiff and his counsel with detailed descriptions of the self-dealing transactions engaged in by Plaintiff with the Benefit Fund Defendants, including an accounting of each transaction and have otherwise thoroughly identified each of Plaintiff's breaches of fiduciary responsibility, as more fully described in Defendants' responses to paragraphs 23 through 106 and paragraph 113 of the Second Amended Complaint, which responses are incorporated herein by reference. By way of further response, paragraph 125 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

126.    Denied. Defendants' responses to paragraphs 23 through 125 of the Second Amended Complaint are incorporated herein by reference. By way of further response, paragraph 126 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

127.    Denied.   Defendants' responses to paragraphs 23 through 124 of the Second Amended Complaint are incorporated herein by reference.   By way of further

response, paragraph 127 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

WHEREFORE, Defendants request that this Court enter judgment for the Defendants and against Plaintiff, dismissing the Eleventh Count with prejudice and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

## TWELFTH COUNT

### Breach of the Implied Covenant of Good Faith and Fair Dealing

128.    Defendants' responses to paragraphs 1 through 127 of the Second Amended Complaint are incorporated herein by reference.

129.    Denied. Defendants' responses to paragraphs 1 through 127 of the Second Amended Complaint are incorporated herein by reference.  By way of further response, the averments of paragraph 129 are denied in that the Employment Agreements speak for themselves. Furthermore, the Trustee Defendants and their predecessors engaged Plaintiff to serve as the Administrator of the New Jersey Carpenters Pension, Annuity, Health, and Apprentice and Training Funds and, post-Merger Date, the Northeast Carpenters Pension, Annuity, Health, and Apprentice and Training Funds, and specifically delegated to Plaintiff the fiduciary responsibilities of care and loyalty required of an Administrator. Trustee Defendants have always acted in good faith with respect to Plaintiff. In December of 2016, the Trustee Defendants discovered that Plaintiff repeatedly breached his fiduciary responsibilities of care and loyalty by engaging in the conduct described in Defendants' responses to paragraphs 23 through paragraph 113 of the Second Amended Complaint and in the Counterclaims asserted below, all of which are

incorporated herein by reference. By way of further response, Plaintiff materially breached his Employment Agreements as described herein, which material breaches excuse performance by the Benefit Fund Defendants and the Trustee Defendants.

130.    Denied. Defendants' responses to paragraphs 23 through paragraph 129 of the Second Amended Complaint are incorporated herein by reference.  By way of further response, paragraph 130 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

131.    Denied. Defendants' responses to paragraphs 23 through paragraph 129 of the Second Amended Complaint re incorporated herein by reference.  By way of further response, paragraph 131 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

132.    Denied.  Defendants' responses to paragraphs 23 through paragraph 129 of the Second Amended Complaint are incorporated herein by reference.  By way of further response, paragraph 132 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

133.    Denied.  Defendants' responses to paragraphs 23 through 129 of the Second Amended Complaint are incorporated herein by reference By way of further response, Paragraph 133 of the Second Amended Complaint asserts conclusions of law which are deemed denied.

WHEREFORE, Defendants request this Court enter judgment for the Defendants and against Plaintiff, dismissing the Twelfth Count with prejudice and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff is not entitled to a jury trial because the Claims and Counterclaims in this case arise under and are governed by ERISA. <u>Pane v. RCA Corp.</u>, 868 F.2d 631 (3d Cir. 1989). Accordingly, Defendants' request the Court strike Plaintiff's jury demand.

## DEFENDANTS' AFFIRMATIVE DEFENSES

134.   The detailed factual averments set forth in Defendants' responses to paragraphs 1 through 133 of the Second Amended Complaint are incorporated herein by reference and form the basis for the affirmative defenses set forth in paragraphs 135 through 148.

135.   The First, Second, Third, and Fourth Counts of the Second Amended Complaint fail to state claims for relief upon which relief can be granted under ERISA.

136.   The Fifth through Twelfth Counts of the Second Amended Complaint are pre-empted by ERISA.

137.   The Fifth through Twelfth Counts of the Second Amended Complaint fail to state claims upon which relief can be granted under New Jersey state law.

138.   The Fifth, Sixth, Seventh, and Tenth Counts of the Second Amended Complaint fail to allege with particularity the date, time, and place of the alleged fraud or misrepresentation or otherwise inject precision or some measure of substantiation into a fraud allegation and therefore fail to state claims upon which relief can be granted.

139.   Plaintiff is not entitled to punitive or compensatory damages under ERISA.

140.   To the extent that Plaintiff's state law claims are not pre-empted by ERISA, Plaintiff is not entitled to compensatory and punitive damages or the award of attorneys' fees.

141.    Plaintiff's claims are barred by the doctrines of illegality, estoppel, and unclean hands.

142.    Plaintiff's claims for relief are fully set-off by the losses that the Benefit Fund Defendants suffered by reason of Plaintiff's self-dealing and other breaches of his fiduciary responsibility as the Administrator for the New Jersey Carpenters Pension, Annuity, Health, and Apprentice and Training Funds and, post-Merger Date, the Northeast Carpenters Pension, Annuity, Health, and Apprentice and Training Funds as described herein.

143.    The Third Count is barred by the collateral source rule.

144.    Plaintiff's Second Amended Complaint admits to the following misconduct, which is prohibited by ERISA Section 406(b), and which bars his claims for relief in the First through Twelfth Counts:

(i)     Plaintiff exercised his authority as Administrator of the NJ Pension Fund to unilaterally interpret the NJ Pension Plan as permitting the distribution of his Base Pension without actually retiring and, on that basis, cause that Plan to begin the distribution of his Base Pension on October 1, 2015, and to cause the Northeast Pension Plan to continue those payments after the Merger Date, all without the approval of the Board of Trustees and in violation of the express requirements in NJ Pension Plan and after the Merger Date, the Northeast Pension Plan; namely, that he permanently cease working as Administrator or otherwise in the industry covered by the NJ Pension Plan, and post-Merger Date, the Northeast Pension Plan, to be eligible to receive his Base Pension;

32

      (ii)      Plaintiff exercised his authority as Administrator of the NJ Pension Fund to interpret his Employment Agreements as entitling him to distribution of his Pension Supplement while he continued to work as Administrator, and to cause the NJ Pension Fund to begin the distribution of his Pension Supplement on October 1, 2015, and the Northeast Pension Fund to continue those payments after the Merger Date, all without the approval of the Board of Trustees and in violation of the express requirement in his Employment Agreement that he permanently cease working as Administrator or otherwise in the industry covered by the NJ Pension Plan and, post-Merger Date, the Northeast Pension Plan; and

      (iii)      Plaintiff exercised his authority as Administrator to disregard the requirement in his Employment Agreements that contributions be made on his behalf to the New Jersey Carpenters Annuity Fund and instead, caused the NJ Pension Plan to enhance the amount of those contributions in disregard of the limit described in Section 401(a)(17) of the Internal Revenue Code, and distribute them directly to Plaintiff from in or about 1997 through 2016, all without the approval of the Board of Trustees and in violation of the express contribution requirement in his Employment Agreements and in disregard of IRC Section 401(a)(17).

145. Plaintiff's claims are barred by his egregious and repeated breaches of his fiduciary duties of care and loyalty under ERISA as well as his fraud, illegal conduct, and concealment of that conduct, all of which is described in paragraphs 1 through 133 of Defendants' Answer and further described in Defendants' Counterclaims set forth below.

146.    The Eighth and Ninth Counts are barred by a failure of consideration.

147.    The Eighth, Ninth, Eleventh, and Twelfth Counts are barred by Plaintiff's material breaches of the Employment Agreements.

WHEREFORE, Defendants request this Court enter judgment for the Defendants and against Plaintiff on the First through Twelfth Counts of Plaintiff's Second Amended Complaint, dismissing those Counts with prejudice and awarding Defendants costs, attorneys' fees, and such other legal and equitable relief as the Court deems appropriate.

## COUNTERCLAIMS

148.    Paragraphs 1 through 147 of this Answer are incorporated herein by reference.

149.    Pursuant to ERISA §§401-404 and the Trust Agreements, the Trustees are the named fiduciaries for the Benefit Funds and are ultimately responsible for the following: (i) managing and controlling the assets of each Benefit Fund; (ii) collecting contributions and other income owed to the Benefit Funds; (iii) designing and administering a plan of benefits for each Benefit Fund; (iv) paying all reasonable expenses of each Benefit Fund; and (v) otherwise managing and controlling the administration of the Benefit Funds for the exclusive benefit of the participants and beneficiaries of each Benefit Fund.

150.    Beginning in or about 1984, the Trustees of the New Jersey Carpenters Benefit Funds engaged Plaintiff to act as Administrative Manager of the New Jersey Carpenters Benefit Funds and delegated to Plaintiff the responsibility for and authority over the day-to-day administration of the Benefit Funds, including: (i) monitoring plan investments and assets; (ii) administration of each plan of benefits adopted by the Trustees, including determinations of eligibility for coverage and benefits under those plans; (iii) payment of

34

benefit claims pursuant to the benefit plans; (iv) complying with ERISA's reporting and disclosure requirements and otherwise communicating with participants regarding their rights, obligations, claims and appeals; and (v) performing all other functions necessary to ensure that the Benefit Funds are being administered for the exclusive benefit of the participants and beneficiaries and in accordance with the Trust Agreements, ERISA, and the benefit plans adopted by the Trustees.

151.    As Administrative Manager of the New Jersey Benefit Funds and, post-Merger Date, the Northeast Carpenters Benefit Funds, Plaintiff was a fiduciary under ERISA Sections 402 through 405, and pursuant to ERISA Section 404(a)(1), was required to discharge his duties with respect to the Northeast Carpenters Benefit Funds solely in the interest of the participants and the beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying the reasonable expenses of administering the plan, each with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA subchapters I and III. True and correct copies of the plan documents governing the Northeast Carpenters Benefit Funds are attached hereto as Exhibit E.

152.    As Administrative Manager of the Northeast Benefit Funds, Plaintiff was prohibited by ERISA Section 406(a) from causing or permitting any of the Benefit Funds to engage in direct or indirect transactions involving Benefit Fund assets as described below, unless the transactions were exempted by ERISA Section 408:

35

- Sale of exchange, or leasing, or any property between a Plan and a party in interest;

- Lending of money or other extension of credit between a Plan and a party in interest;

- Furnishing of goods, services or facilities between a Plan and a party in interest; or

- Transfer to, or use by or for the benefit of a party in interest, any assets of the Plan.

153.   In addition, ERISA Section 406(b) prohibited Plaintiff from engaging in the following self-directed transactions with the Northeast Carpenters Benefit Funds:

- Dealing with the assets of the Plan in his own interest or for his own account;

- In his individual or in any other capacity, acting in any transaction involving a Plan on behalf of a party (or represent a party) whose interests are adverse to the interests of a Plan or the interests of its participants and beneficiaries; or

- Receiving any consideration for his own personal account from any party dealing with such Plan in connection with a transaction involving the assets of the Plan.

154.   From on or about June 19, 1985, through December 31, 2015, Plaintiff served as Administrative Manager to the New Jersey Carpenters Benefit Funds pursuant to the following successive employment agreements:

154.1. an agreement by and between Plaintiff and the Trustees of the New Jersey Pension Benefit Fund dated June 19, 1985 ("1985 Agreement");

154.2. an agreement between the same parties dated February 6, 1990 ("1990 Agreement");

36

154.3. an agreement between the same parties dated October 18, 1993 ("1993 Agreement"); and

154.4. an agreement between the same parties dated November 17, 1998 ("1998 Agreement").

See Exhibit A.

155.   The 1998 Agreement confirmed Plaintiff's engagement as Administrative Manager for the New Jersey Carpenters Benefit Funds until December 31, 2005, and for five-year extensions thereafter, unless his employment was terminated sooner or extended beyond that date. The 1998 Agreement promised Plaintiff the following benefits:

- a salary to be determined by the Board of Trustees (¶ 2);

- contributions to such employee benefit plans as approved by the Board of Trustees (¶ 3);

- a supplement to his pension ("Pension Supplement") provided by the New Jersey Pension Plan payable upon retirement and equal to 4% of his average monthly compensation received during the three consecutive years of employment at his highest compensation multiplied by his years (and fraction thereof) of employment by the Trustees since March 1, 1984, less the portion of his monthly pension received from the New Jersey Carpenters Pension Fund ("Base Pension") attributable to years of service under the rules of such Pension Fund after March 1, 1984 (¶ 4); and

- all holidays and personal days with pay as may be approved for Pension Fund office employees by the Trustees as well as the following additional fringe benefits, including, *inter alia*:

- four weeks of paid vacation each year which may be accumulated from year to year if not used, but not beyond 3 years from the year earned, provided that he must take at least 2 weeks of vacation per year; and

- use of an automobile and reimbursement of all expenses incurred in connection with the operation thereof (¶ 6).

156.   On March 17, 2005, the Co-Chairmen of the Board of Trustees and Plaintiff entered into a summary agreement that amended the 1998 Agreement to confirm that the combination of Plaintiff's Pension Supplement and his Base Pension would be capped at 100% of his annual salary ("2005 Amendment"). The 2005 Amendment is attached hereto as part of Exhibit A. Plaintiff requested and regularly received reports from the actuary for the New Jersey Pension Benefit Fund disclosing the value of his Pension Supplement and the financial impact on his Pension Supplement of an increase in his salary.

157.   Plaintiff owed a fiduciary duty of loyalty to fully disclose to the Trustees the existence of his Employment Agreements, the financial terms of his employment as Administrative Manager under the Employment Agreements, and any reports he received regarding the financial impact of any increase in his salary on the Pension Supplement whenever he requested and/or negotiated over an increase in his salary.

158.   Plaintiff's faithful satisfaction of his duty of care and loyalty in his salary negotiations was critical to ensuring that successive Boards of Trustees were fully informed when they or their delegates negotiated those increases because the individual make-up of the Board of Trustees changed dramatically over the course of Plaintiff's employment.

159.    If Plaintiff provided the Trustees with the reports and calculations regarding the effect of a salary increase on his Pension Supplement, the Trustees would have been properly informed regarding Plaintiff's total compensation, including his Pension Supplement, and would have been able to determine, in their discretion, whether to provide any salary increase or negotiate an additional limit on Plaintiff's Pension Supplement in exchange for a higher salary increase.

160.    Plaintiff breached his duties of care and loyalty when he negotiated his salary increases with the Trustees by intentionally concealing and/or failing to disclose to the Trustees the existence of his Employment Agreement or the reports and calculations that he received from the actuary for the New Jersey Pension Benefit Fund regarding the value of his Pension Supplement and the impact of salary increases on his Pension Supplement.

161.    Plaintiff's concealment as described above caused the Trustees to unknowingly increase the value of his Pension Supplement to what is now an excessive, unreasonable, and unenforceable amount.

162.    On and after the Merger Date, Plaintiff was employed by the Trustees of the Northeast Health Fund to serve as Administrative Manager of the Northeast Benefit Funds. However, during the merger negotiations between the Trustees for the New Jersey Benefit Funds and the Trustees for the Empire State Benefit Funds, Plaintiff knowingly and intentionally failed to disclose the existence of his 1998 Agreement. Accordingly, the Northeast Health Fund Trustees failed to assume or agree to the 1998 Agreement, as amended nor did the Merger Agreement between the New Jersey Carpenters Pension Fund and the Empire State Carpenters Pension Fund require the Northeast Pension Fund

assume and become bound by the Pension Supplement provisions in the 1998 Agreement, as amended by the 2005 Amendment.

163.    Plaintiff violated ERISA Sections 402, 403, 404(a)(1) and 406(a) and 406(b), the provisions of the New Jersey Pension Plan Document and, post-Merger Date, the Northeast Pension Plan Document, and the provisions of his 1998 Employment Agreement when he unilaterally disregarded the requirement in the New Jersey Pension Plan document that he actually retire in order to be eligible to begin receiving his Base Pension from the New Jersey Pension and, beginning on October 1, 2015, caused the New Jersey Pension Fund to begin the distribution of those payments ($9,689 per month) while he continued to serve as Administrative Manager, and caused the Northeast Pension Fund to continue those payments after the Merger Date, despite similar prohibitions in the Northeast Pension Plan document.

164.    The total loss to the Northeast Pension Fund, including the loss sustained by the New Jersey Pension Fund, caused by the impermissible Base Pension payments Plaintiff collected from October 1, 2015 through December 31, 2016, equals $145,335, plus interest through the January 1, 2018.

165.    Plaintiff violated ERISA Sections 402, 403, 404(a)(1), 406(a) and 406(b), and the provisions of the 1998 Agreement, to the extent enforceable, when he unilaterally determined that he was entitled to the immediate payment of the monthly Pension Supplement specified in the 1998 Agreement, as amended by the 2005 Amendment, and, beginning on or about October 1, 2015, he caused the New Jersey Pension Fund, and post-Merger Date, the Northeast Pension Fund, to pay his Pension Supplement ($14,729 per month), while he continued to work as Administrative Manager.

166.   The total loss to the Northeast Pension Fund, including the loss sustained by the New Jersey Pension Fund, caused by the impermissible Pension Supplement payments that Plaintiff collected from both Funds from October 1, 2015 through December 31, 2016 equals $220,935, plus interest.

167.   In violation of ERISA Sections 402, 403, 404(a)(1), 406(a) and 406(b), the applicable Plan documents, and the provisions of his Employment Agreements beginning in 1997 and continuing through December 2016, Plaintiff materially breached his Employment Agreements by causing the New Jersey Carpenters Pension Fund, and post-Merger Date, the Northeast Carpenters Health Fund, as his employer, to disregard the requirement in his Employment Agreements that contributions be made on his behalf to the New Jersey Carpenters Annuity Fund, and post-Merger Date, the Northeast Carpenters Annuity Fund, and instead, unilaterally enhanced the amount of those contributions in disregard of the limit described in Section 401(a)(17) of the Internal Revenue Code (the "Code"), and diverted that amount to his pay, all without the approval of the Trustees.

168.   The total loss to the New Jersey Pension Fund caused by the conduct described in paragraph 167 is $686, 092, plus interest. The total losses to the Northeast Health Fund caused by the conduct described in paragraph 167 is $34,254, plus interest.

169.   After the termination of Plaintiff's employment, the Trustee Defendants engaged a forensic accountant to investigate all of Plaintiff's transactions with plan assets and discovered other self-dealing transactions and breaches of fiduciary duty with respect to plan expenses as described below (hereinafter, "the 2017 Forensic Audit").

170.   As required by ERISA Sections 405 and 409, these counterclaims seek recovery of the losses caused to each Benefit Fund by the impermissible transactions

41

described below as well as an accounting of all profits Plaintiff gained from the self-dealing transactions and an order to disgorge those profits to the appropriate Benefit Fund.

171.  **Unauthorized Automobile Bonuses.** The Trustee Defendants discovered through the 2017 Forensic Audit that, beginning in or about 1998, Plaintiff caused the New Jersey Pension Fund, and post-Merger Date, the Northeast Health Fund, as his employer, to pay him an annual automobile bonus equal to one week's pay, without the approval of the Trustees and in violation of ERISA Sections 402, 403, 404(a)(1), 406(a) and 406(b), and his Employment Agreements.

172.  The total loss to the New Jersey Pension Fund caused by the impermissible annual automobile bonuses that Plaintiff collected from 1997 through December 31, 2015 equals $81,130, plus interest.

173.  The total loss to the Northeast Health Fund caused by the impermissible annual automobile bonuses that Plaintiff collected from January 1, 2016 through December 31, 2016, was $5,412, plus interest.

174.  **Unauthorized Vacation Payouts.** The Trustee Defendants also discovered through the 2017 Forensic Audit that, beginning in or around 1998, Plaintiff caused the New Jersey Pension Fund, and post-Merger Date, the Northeast Health Fund, as his employer, to pay him for four weeks of unused vacation for each year through 2016, even though his Employment Agreements expressly limited his right to accrued but unused vacation pay to two weeks of vacation pay per year.

175.  Plaintiff caused the New Jersey Pension Fund and, post-Merger date, the Northeast Health Fund, to make these vacation payments without the approval of the Board

of Trustees, and in violation of ERISA Sections 402, 403, 404(a)(1), 406(a) and 406(b), as well as his Employment Agreements.

176.   The total amount of excess and unauthorized vacation pay that Plaintiff caused the New Jersey Pension Fund, and post-Merger Date, the Northeast Health Fund to pay him was $169,927.

177.   The total loss to the New Jersey Pension Fund caused by the excess and unauthorized vacation pay that Plaintiff collected from that Fund equals $154,690, plus interest.

178.   The total loss to the Northeast Health Fund caused by the excess and unauthorized vacation pay that Plaintiff collected from that Fund was $16,237, plus interest.

179.   **Unauthorized Holiday Bonuses.** The Trustee Defendants also discovered through the 2017 Forensic Audit that, in each of the years 1998 through 2003, without the approval of the Board of Trustees, and in violation of ERISA Sections 402, 403, 404(a), 406(a), and 406(b), as well as his Employment Agreements, Plaintiff caused the New Jersey Pension Fund, as his employer, to pay him holiday bonuses in excess of the amounts approved by the Trustees for Fund Office staff.

180.   The total amount of excess and unauthorized holiday bonuses that Plaintiff awarded himself is $18,439.

181.   The total loss to the New Jersey Pension Fund caused by the excess and unauthorized holiday bonuses that Plaintiff collected from that Fund, equals $18,439, plus interest.

182.   **Additional, Unauthorized Bonuses.** The Trustee Defendants discovered through the 2017 Forensic Audit that in 2006, 2008, and 2009, without the approval of the

43

Board of Trustees, and in violation of ERISA Sections 402, 403, 404(a)(1), 406(a)(1) and 406(b), as well as his Employment Agreements, Plaintiff caused the New Jersey Pension Fund, as his employer, to pay him additional and unspecified bonuses to which he was not entitled of $25,000 in each year.

183.    The total loss to the New Jersey Pension Fund caused by the excess and unauthorized bonuses that Plaintiff collected from that Fund in 2006, 2008, and 2009, equals $75,000, plus interest.

### Recovery of Losses Caused by Plaintiff's
### Unlawful Extension of Benefit Coverage to Fred Mihelic

184.    Throughout the period between 1992 and 2016, Fred Mihelic, an independent public relations consultant, served the Northeast Carpenters Benefit Funds on a limited, part-time basis as an independent consultant, working from home and working when and as necessary to assist in the compilation of newsletters and other communications.

185.    The Trustee Defendants first learned through the 2017 Forensic Audit that, from in or about 1992 through 2016, Plaintiff caused the New Jersey Pension Fund, and post-Merger Date, the Northeast Health Fund, to treat Mihelic as a full-time employee of the New Jersey Pension Fund, and post-Merger Date the Northeast Health Fund; to pay him excessive wages as if he were a full-time employee; and to provide him with excessive wages, fringe benefits and benefit coverage under the Northeast Benefit Funds as if he were a full-time employee, all without the approval of the Trustees.

186.    Plaintiff's unilateral extension of benefit coverage to Mihelic as described above violated ERISA Sections 402, 403, 404(a)(1), and 406(a), the applicable Pension, Annuity, and Health Plan documents, provisions of his Employment Agreements and the

44

Fund Office Employment Guidelines, a true and correct copy of which is attached hereto as Exhibit F.

187.    Plaintiff's treatment of Mihelic as an employee of the New Jersey Pension Fund, and post-Merger Date, the Northeast Health Fund, and Plaintiff's extension of benefit coverage under the Northeast Benefit Funds, violated the express requirement of those Plans that eligibility for participation be limited to employees of contributing employers to those Plans.

188.    The total cost of the benefit coverage Plaintiff unilaterally and impermissibly caused the New Jersey Benefit Funds, and post-Merger Date, the Northeast Benefit Funds, to provide to Mihelic is as follows:

- Health benefits in the amount of $341,597;
- Contributions to a Health Reimbursement Account ("HRA") in the amount of $5,511;
- Contributions to the New Jersey Carpenters Annuity Fund and, post-Merger Date, the Northeast Carpenters Annuity Fund in the amount of $136,226; and
- Pension benefits from the New Jersey Carpenters Pension Fund and, post-Merger Date, the Northeast Carpenters Pension Fund in the amount of $179,360.

189.    The total loss to the New Jersey Health Fund and, post-Merger Date, the Northeast Health Fund caused by Plaintiff's impermissible enrollment of Mihelic in those Plans equals $348,521, plus interest.

190.   The total loss to the New Jersey Pension Fund and, post-Merger Date, the Northeast Carpenters Pension Fund caused by Plaintiff's unilateral decision to provide the pension benefits and annuity benefits described above equals $313,173, plus interest.

191.   The total loss to the New Jersey Pension Fund, and post-Merger Date, the Northeast Health Fund, caused by Plaintiff's unilateral decision to overpay Mihelic for the services he actually rendered to the Benefit Funds during the period 1992 through 2016 exceeds $864,000, plus interest.

### Recovery by the Apprentice Fund of the Cost of Two Dining Room Tables

192.   Through the 2017 Forensic Audit, the Trustee Defendants learned that Plaintiff used his authority as Apprentice Fund Administrator to cause the New Jersey Apprentice Fund to employ a master cabinetmaker for the sole and exclusive purpose of building two extravagant dining room tables for Plaintiff's home, including the preparation of a mock-up of the second dining room table after Plaintiff's wife rejected the first table, all without the approval of the Trustees.

193.   Plaintiff gave the rejected table to his daughter and accepted the mockup and the second table for his own home.

194.   Plaintiff's demand for and receipt of the ornate dining room tables described above violated ERISA Sections 402, 403, 404(a)(1), 406(a) and 406(b), the applicable Plan documents, and the provisions of his Employment Agreements.

195.   The total loss incurred by the New Jersey Apprentice Fund in purchasing the materials for the mock-up and the two tables, and in paying the wages for the master cabinetmaker was in excess of $10,250, plus interest.

196.   **Negligent Pension Payments.** Through the 2017 Forensic Audit, the Trustee Defendants discovered that, beginning in June 2007, Plaintiff caused the New Jersey Carpenters Pension Fund to commence monthly pension payments to six (6) Fund Office employees who had attained age 65 but did not actually retire from employment, and caused the Northeast Carpenters Pension Fund to continue those payments post-Merger Date, despite similar prohibitions in the Northeast Pension Fund Plan document (see Exhibit E at Sections 1.14, 1.29 and 3.01), all without the approval of the Trustees.

197.   Plaintiff's unilateral decision to cause the New Jersey Carpenters Pension Fund and the Northeast Carpenters Pension Fund to pay the in-service pensions to Fund Office employees as described above violated ERISA Sections 402, 403, 404(a)(1) and 406(a), the New Jersey Carpenters Pension Plan Document (see Exhibit E at Article III, Section 3(c)), and his Employment Agreements.

198.   The total loss incurred by the Northeast Carpenters Pension Fund, including the loss incurred by the New Jersey Carpenters Pension Fund, arising from the distribution of these pension payments to the six (6) working Fund Office retirees before they were eligible to receive them is $321,121, plus interest.

199.   **Negligent Retiree Health Benefit Payments.** Through the 2017 Forensic Audit, the Trustee Defendants discovered that, beginning in 2010, Plaintiff caused the New Jersey Health Fund to provide retiree medical coverage to certain Fund Office employees who retired from active employment at no cost to these retirees for at least the first twelve (12) months of their retirement, and caused the Northeast Health Fund to continue those payments, despite similar prohibitions in that Plan document, all without the approval of the Trustees.

200.    Plaintiff's unilateral decision to cause the New Jersey Health Plan and, post-Merger Date, the Northeast Health Plan, to provide retiree medical coverage to the Fund Office employees even though they were not eligible violated ERISA Sections 402, 403, 404(a)(1) and 406(a), the New Jersey Carpenters Health Fund Plan Document, and his Employment Agreements.

201.    The total loss incurred by the Northeast Health Fund, including the loss incurred by the New Jersey Health Fund, to provide coverage to these individuals is $55,800, plus interest.

## COUNT ONE

### NORTHEAST CARPENTERS PENSION, ANNUITY, and HEALTH FUNDS v. LAUFENBERG

**Recovery of Losses and Disgorgement of Profits Arising Out of Plaintiff's Self-Dealing and Other Breaches of Fiduciary Duties**

202.    The averments in paragraphs 1 through 201 above are hereby incorporated by reference.

203.    The Board of Trustees, as co-fiduciaries to the Northeast Pension, Health, and Annuity Funds under ERISA, are required by ERISA §405 and §409 to recoup the following losses for and on behalf of the Northeast Pension, Health, and Annuity Benefit Funds caused by the self-dealing transactions and other breaches of Plaintiff's fiduciary duties of care and loyalty to the New Jersey and Northeast Pension, Health and Annuity Funds described above and detailed below:

i.    All Base Pension payments that Plaintiff received from October 1, 2015 through December 31, 2016, which total $145,335, plus interest at an annual rate of 7.5%;

48

ii.    All Pension Supplement payments that Plaintiff received through December 31, 2016, which total $220,935, plus interest at an annual rate of 7.5%;

iii.    All salary increases that Plaintiff caused the New Jersey Pension Plan to pay to himself when he unilaterally diverted Annuity Fund contributions to his pay and unilaterally enhanced those increases in amounts equal to the amount of Annuity Plan contributions that would have been prohibited by IRC §401(a)(17), which increases total $720,346, plus interest at 7.5%;

iv.    All vacation payments received by Plaintiff that were not authorized by Plaintiff's Employment Agreements, which payments totaled $169,927, plus interest at the rate of 7.5%;

v.    All unapproved "automobile bonuses" received by Plaintiff which totaled $86,542, plus interest at 7.5%;

vi.    All unauthorized holiday pay received by Plaintiff, which totaled $18,439, plus interest at 7.5%;

vii.    All other unauthorized bonuses received by Plaintiff, which totaled $75,000, plus interest at 7.5%;

viii.    The total loss to the New Jersey Health Fund and, post-Merger Date, the Northeast Health Fund caused by Plaintiff's impermissible enrollment of Mihelic in those Plans, which totals $348,521, plus interest at 7.5%;

ix.   The total loss to the New Jersey Pension Fund and, post-Merger Date, the Northeast Pension Fund caused by Plaintiff's unilateral decision to provide Mihelic with pension benefits and annuity benefits described above, which totals $313,173, plus interest at 7.5%;

x.   The total loss to the New Jersey Pension Fund, and post-Merger Date, the Northeast Health Fund, caused by Plaintiff's unilateral decision to overpay Mihelic for the services he actually rendered to the Benefit Funds during the period 1992 through 2016, which totals far in excess of $864,000, plus interest at 7.5%;

xi.   The total loss incurred by the Northeast Pension Fund, including the loss incurred by the New Jersey Pension Fund, arising from Plaintiff's unauthorized and negligent distribution of in-service pension payments to the seven working Fund Office retirees before they were eligible to receive them, which loss totals $334,176, plus interest at 7.5%;

xii.   The total loss incurred by the Northeast Health Fund, including the loss incurred by the New Jersey Health Fund, arising from Plaintiff's unauthorized and negligent provision of retiree medical coverage to retired Fund Office employees, which loss totals $55,800, plus interest at 7.5%.

204.   Pursuant to ERISA §409, Plaintiff is personally liable to the Northeast Pension, Health and Annuity Funds to make good to those Funds the losses described with particularity above arising from the violations of his fiduciary duties of care and loyalty

and to account for and disgorge all profits he has derived from the self-dealing transactions described above.

205.    Other than his individual accounts in the Northeast Annuity Fund, Plaintiff does not have sufficient assets to restore the losses he caused to the Northeast Benefit Funds or disgorge the profits he gained from his self-dealing transactions as described more fully above.

206.    Pursuant to ERISA §206(d)(4), this Court is authorized to order that the balances of Plaintiff's individual accounts in the Northeast Annuity Fund be paid to the Northeast Pension, Annuity, and Health Funds, in accordance with the amount of their losses, including interest, attorneys' fees and costs incurred by the Benefit Funds to discover and recover those losses and profits.

207.    To secure the right of the Benefit Funds to the restoration of losses and profits owed by Plaintiff to the Benefit Funds, the Trustees have suspended the distribution of Plaintiff's individual accounts in the Northeast Annuity Fund pending either Plaintiff's correction of the losses described or this Court's order requiring such an offset.

208.    Pursuant to ERISA §206(d)(4), this Court is also authorized to order that Plaintiff's Base Pension be reduced to the extent necessary to restore to the Northeast Pension Fund the losses caused to that Fund and the New Jersey Pension Fund by Plaintiff's breaches of his fiduciary duties plus the profits gained by Plaintiff from his self-dealing with respect to those Funds, including interest, attorneys' fees and costs incurred by the Benefit Funds to discover and recover those losses and profits.

209.    The Trustee Defendants have not suspended the distribution of Plaintiff's Base Pension.

210.   This Court is also authorized to set off the losses and profits described above against the amount of the Pension Supplement, if any, that is payable to Plaintiff, without regard to ERISA §206(d)(4) because the Pension Supplement is an unfunded, nonqualified deferred compensation promise that is not regulated by ERISA, including interest, attorneys' fees and costs incurred by the Benefit Funds to discover and recover those losses and profits.

WHEREFORE, the Trustee Defendants and the Northeast Carpenters Pension, Annuity, and Health Funds hereby request that judgment be entered in their favor and against Plaintiff, ordering Plaintiff to restore all of the losses described with particularity above to the appropriate Benefit Funds and account for and disgorge to the appropriate Benefit Funds all profits that Plaintiff gained from his self-dealing as described with particularity above, and  awarding to the Benefit Funds all of the attorneys' fees and costs incurred by them in identifying and pursuing the recovery of the losses and profits described above, along with such other legal and equitable relief as this Court deems appropriate. To the extent that Plaintiff is unable to immediately satisfy the judgment described above, Defendants further request the following declaratory relief:

      i.   A final order requiring that Plaintiff pay to the Benefit Funds the amount of Plaintiff's individual accounts in the Northeast Annuity Fund, allocated to the Pension, Health, and Annuity Funds in accordance with the amount of their losses;

     ii.   A final order requiring the Northeast Pension Fund reduce Plaintiff's Base Pension to an amount which, when combined with all other sources of recovery, is projected to fully restore the losses to the

Northeast Pension Fund and its predecessor, the New Jersey Pension Fund, caused by Plaintiff plus the profits gained by the Plaintiff from his self-dealing with the New Jersey and Northeast Pension Fund assets;

iii.   To the extent that this Court determines that any amount of Plaintiff's Pension Supplement is payable, a final order requiring that the Northeast Pension Fund suspend payment of the payable amount of the Pension Supplement until the present value of those payments, plus all other sources of recovery, is projected to fully restore the losses to the Northeast Pension Fund and its predecessor, the New Jersey Pension Fund, caused by Plaintiff plus the profits gained by the Plaintiff from his self-dealing with the New Jersey and Northeast Pension Fund assets.

## COUNT TWO

## NORTHEAST CARPENTERS APPRENTICE FUND v. LAUFENBERG
### Recovery of the Cost of the Dining Room Tables

211.   Plaintiff's demand for and receipt of the ornate dining room tables conduct described above violated ERISA Sections 402, 403, 404(a)(1), 406(a) and 406(b), the applicable Plan documents, and the provisions of his Employment Agreements.

212.   The total loss incurred by the New Jersey Carpenters Apprentice Fund in purchasing the materials for the mock-up and the two tables, and in paying the wages for the master cabinetmaker was in excess of $10,250, plus interest.

213.   Pursuant to ERISA §409, Plaintiff is personally liable to the Northeast Carpenters Apprentice Fund to restore to that Fund the losses and profits arising from Plaintiff's self-dealing, including interest, attorneys' fees and costs incurred by the Apprentice Fund to discover and recover those losses and profits.

53

WHEREFORE, the Trustee Defendants and the Northeast Carpenters Apprentice Fund hereby request that judgment be entered in their favor and against Plaintiff, ordering Plaintiff to restore all of the losses described with particularity above to the appropriate Benefit Funds and account for and disgorge to the appropriate Benefit Funds all profits that Plaintiff gained from his self-dealing as described with particularity above, and awarding to the Benefit Funds all of the attorneys' fees and costs incurred by them in identifying and pursuing the recovery of the losses and profits described above, along with such other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

SUSANIN, WIDMAN & BRENNAN, P.C.

Dated: 3/14/18

E. Schlax

Elizabeth K. Schlax, Esq. (ID No. 901272012)
eschlax@swbcounsellors.com
John H. Widman, Esq. (admitted *Pro Hac Vice*)
jwidman@swbcounsellors.com
656 E. Swedesford Rd., Suite 330
Wayne, PA 19087
(610) 710-4510
Attorneys for Defendants