# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

**GEORGE R. LAUFENBERG,**

      **Plaintiff,**

      **v.**

**NORTHEAST CARPENTERS PENSION FUND, NORTHEAST CARPENTERS ANNUITY FUND, NORTHEAST CARPENTERS HEALTH FUND, NORTHEAST CARPENTERS APPRENTICE FUND, and the BOARD OF TRUSTEES FOR THE NORTHEAST CARPENTERS PENSION, ANNUITY, HEALTH, AND APPRENTICE FUNDS,**

      **Defendants**

Civil Action No. 17-1200 (MAH)

OPINION

---

## I.    INTRODUCTION

This civil action concerns a dispute over Plaintiff George R. Laufenberg's collection of retirement benefits during his tenure as the Plan Administrator for the Northeast Carpenters Pension Fund, Northeast Carpenters Annuity Fund, Northeast Carpenters Health Fund, and Northeast Carpenters Apprentice Fund ("Benefit Fund Defendants"). Following his termination, Plaintiff filed this action to recover certain sums that the Boards of Trustees ("Trustee Defendants") have allegedly withheld from him based on their belief that Plaintiff engaged in self-dealings in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. This matter now comes before the Court on Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). Specifically, Defendants seek the dismissal of the Third Amended Complaint and the entry of partial judgment

in their favor on their First Counterclaim.  For the reasons that follow, Defendants' motion is granted in part and denied in part.

## II.      BACKGROUND

### 1.   Plaintiff's Employment[1]

The Benefit Fund Defendants are Taft-Harley multiemployer employee benefit plans within the meaning of the ERISA.  *See* Third Am. Compl. ¶ 3, D.E. 145; Answer to Third Am. Compl. with Affirmative Defenses and Am. Countercls. ("Answer & Countercls."), ¶ 14, D.E. 146.  The Trustee Defendants are responsible for the management and administration of each Fund's assets.  *See* Answer & Countercls. ¶ 163.  "The collective purpose of the Benefit Funds is to provide retirement benefits and various fringe benefits to eligible employees on whose behalf employers contribute to the Benefit Funds, pursuant to collective bargaining agreements between certain employers in the construction industry and the Northeast Carpenters Union."  Third Am. Compl. ¶ 14; *see also* Answer & Countercls. ¶ 14.

Plaintiff served as the Plan Administrator for the funds from 1984 until his termination in December 2016.  Third Am. Compl. ¶¶ 5; Answer & Countercls. ¶ 5.  In 1984, the Trustees of the New Jersey Carpenters Benefit Funds—the predecessor to the Benefit Fund Defendants— "delegated to Plaintiff the responsibility for and authority over the day-to-day administration of the Benefit Funds."  Answer & Countercls. ¶ 164.  Following a merger effective January 1, 2016 between the New Jersey Carpenter Benefit Funds and the Empire State Carpenters Funds, Plaintiff

---

[1] The Court recites the material allegations in both parties' pleadings that bear on the issues before the Court.  In later assessing whether the Third Amended Complaint survives Defendants' Rule 12(c) motion, this Court accepts all factual allegations therein as true and, "examining for plausibility, 'determine[s] whether, under any reasonable reading the complaint, the plaintiff may be entitled to relief.'"  *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (quoting *Bronowicz v. Allegheny Cnty.*, 804 F.3d 338, 344 (3d Cir. 2015)).

assumed the role of Plan Administrator for the Benefit Fund Defendants.  *See id.* ¶ 165; Third Am. Compl. ¶ 9.

Plaintiff's employment was governed by successive contracts entered into in 1985, 1990, 1993, and 1998 with the Trustees of the New Jersey Pension Fund.  Third Am. Compl. ¶ 6; Answer & Countercls. ¶ 168.  The 1998 contract, titled "Employment and Deferred Compensation Agreement" ("Employment Contract"), confirmed Plaintiff's employment until December 2005, at which time the agreement would automatically be renewed for additional five-year terms absent written notice.[2]  Answer & Countercls., Ex. A., D.E. 146-1 at 14, 20.  The parties renewed the Employment Contract in 2015.  *See* Third Am. Compl. ¶¶ 52-54.  Following the merger, Plaintiff became an employee of the Northeast Health Fund.  Answer & Countercls. ¶ 176.

The Employment Contract provided Plaintiff an annual salary of $286,845.00 at the time of his termination; a "Base Pension" of approximately $10,000 per month along with additional benefits pursuant to his participation in the benefit plans; and a separate retirement benefit ("Deferred Pension Supplement") of approximately $14,000 per month.  *See id.*, D.E. 146-1 at 14-15; Third Am. Compl. ¶¶ 4-13, 53-58.  Paragraph Three of the Employment Contract prescribes the parties' rights and obligations pertaining to the benefit funds:

---

[2]  Although Plaintiff did not attach any exhibits to the Third Amended Complaint, the Court considers the Employment Contract; defense counsel's December 21, 2016, correspondence to Plaintiff; and select benefit plans—all of which are attached to Defendants' Answer—in adjudicating this motion.  Because Plaintiff alleges that Defendants wrongfully suspended certain benefits owed to him following his termination, these documents are "integral to or explicitly relied upon" in the Third Amended Complaint and are properly before the Court.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and citations omitted); *see also Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014) ("[T]he justification for the integral documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents [he or she] must have used in framing [the] complaint, nor should a plaintiff be able evade accountability for such documents simply by not attaching them to [the] complaint.").

> In addition to his cash compensation, contributions shall continue to be made by the Trustees on the Employee's behalf to such employee benefit funds . . . as are presently in effect together with any increases in contribution amounts as may be mutually agreed upon and/or as may be required to maintain the same level of benefits as presently in effect or as may be required by other agreements governing such contributions. The Employee shall be entitled to all benefits provided by such employee benefit funds and there shall be no reduction of any such benefits because of any benefit provided for, or received under this Agreement except in the amount and manner as specifically provided herein for the offset of such benefits against the retirement benefits provided under this Agreement.[3]

Answer & Countercls., Ex. A., D.E. 146-1 at 15.

The New Jersey Carpenters Pension Plan, effective January 1, 2014, set forth the requirements to retire on a pension prior to the merger. *See* Answer & Countercls., Ex. I., D.E. 146-9 at 19-20. Article III prescribed that a qualifying employee "shall be eligible to retire on a [Base Pension] commencing on the first day of the month following his last Hour of Service" provided that:

> (a)    he files with the Trustees, on or before the first day of the month of the first pension payment applied for, an application for retirement on a form provided by the Trustees;
>
> (b)    he submits to the Trustees proof satisfactory to the Trustees of his date of birth and, if married, his Spouse's date of birth and their marriage; and
>
> (c)    he ceases all work in the Industry.

*Id.*, D.E. 146-9 at 19. Article III further provided that "[a] Pensioner shall receive pension payments monthly beginning on the first day of the month coinciding with or next following the

---

[3] To the extent that the plain language of any document cited herein contradicts either party's allegations, "the document controls." *Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012); *see also Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 457 n.6 (D.N.J. 2013).

date that he fully meets the requirements set forth in this Article." *Id.* at 19. With respect to the operation, administration, and interpretation of the plan, Article XII granted the Trustees the authority "to designate an administrative manager for such purposes." *Id.*, D.E. 146-9 at 54.

Following the merger, the Northeast Carpenters Pension Plan prescribes that "[a] Participant may Retire on a [Base Pension] on or after January 1, 2016 with respect to his Pre-January 1, 2016 Accrued Benefit and any Post-January 1, 2016 Accrued Benefit if the Participant has attained Normal Retirement Age." Answer & Countercls., Ex. I-2, D.E. 146-10 at 19. It further provides that "[n]o pension shall be granted unless a properly completed application is made in writing and received by the Trustees." *Id.*, D.E. 146-10 at 43.

Plaintiff is also entitled to receive benefits from the Northeast Carpenters Annuity Fund ("Annuity Fund").[4] *See* Third Am. Compl. ¶¶ 9-11. The Annuity Fund "is a defined contribution plan that provides retirement, deferred compensation, disability retirement, and termination of employment benefits to participants and beneficiaries . . . ." Answer & Countercls. ¶ 11. Employers are required to make contributions to the Annuity Fund on behalf of participants, which are credited to the participant's individual account and become payable upon retirement or the occurrence of certain triggering events. *See* Answer & Countercls., Ex. I-3, D.E. 146-11 at 40-42. Employer contributions to the Annuity Fund are tied to the participant's income; however, both the Annuity Plan and Section 401(a)(17) of the Internal Revenue Code cap the annual compensation to be considered for contributions at $265,000 plus cost-of-living adjustments. *See id.*, D.E. 146-11 at 36-37; 26 U.S.C. § 401(a)(17). A participant in the Annuity Plan is eligible for benefits upon, *inter alia*, certification that he or she has attained the age of fifty-five and "ceased

---

[4] Following the merger, the Board of Trustees for the Northeast Carpenters Annuity Fund adopted and amended the New Jersey Carpenters Annuity Plan as its own. *See* Answer & Countercls., Ex. I-3, D.E. 146-11 at 33.

all work in the Industry." *See id.*, D.E. 146-11 at 43.  With respect to the employer contributions attributed to a participant's account, the Annuity Plan prescribes that "[a] Participant is fully and immediately 100% vested in the value of his or her Account."  *Id.*, D.E. 146-11 at 42.

Paragraph 4 of the Employment Contract governs the Deferred Pension Supplement:

> A.      If the Employee continues in the employ of the Trustees until the retirement age as herein defined, the Trustees shall provide the Employee with a retirement benefit calculated and determined as follows and subject to the following rules:
>
> > i.      a monthly benefit, commencing on the first day of the month following retirement, in an amount equal to:
> >
> > [] 4% of his average monthly compensation received during the three consecutive years of employment at his highest compensation multiplied by his years (and fraction thereof) of employment by the Trustees since March 1, 1984, less the portion of his monthly pension received from the New Jersey Carpenters Pension Fund attributable to years of service under the rules of such Pension Fund after March 1, 1984.
> >
> > ii.      "Retirement Age" as used herein shall mean the then current normal retirement age as provided in the Pension Plan of the New Jersey Carpenters Pension Fund.
> >
> > iii.      There shall be no compulsory retirement under this Agreement except as may be required by applicable federal law.
>
> B.      If at any time during the term of Employee's employment by the Trustees, his employment is severed, regardless of cause of such severance, the Employee may elect to receive the retirement benefit as hereinabove provided, either as a monthly benefit or as a lump sum payment. . . .

*Id.*, D.E. 146-1 at 15-16.  On March 17, 2005, the Trustee Defendants amended the Employment Contract to allow Plaintiff's Deferred Pension Supplement "to accrue up to one hundred percent (100%) of his annual salary at a rate of four percent (4%) per year."  *Id.*, D.E. 146-1 at 21.

### 2. Plaintiff's Allegations

Plaintiff alleges that, on December 20, 2016, Defendants "confronted the Plaintiff and accused him of self-dealing." Third Am. Compl. ¶¶ 22-26. Specifically, Defendants questioned Plaintiff about whether he had been collecting his Base Pension and Deferred Pension Supplement since October 2015. *Id.* ¶ 23. "Plaintiff responded that as and because he was then sixty-five . . . years old, he commenced collection of his pension, to which he believed he was entitled and also continued working." *Id.* According to Plaintiff, the Benefit Funds' accountant addressed whether Plaintiff could collect his pension at the September 2015 Board of Trustees meeting. *Id.* ¶ 27. Plaintiff avers that he only proceeded to collect his pension upon receiving no response from the Benefit Funds attorney. *Id.* ¶ 28. Plaintiff also stated that "since 2001 he was in receipt of, on a quarterly basis, cash in lieu of his annuity contribution for which taxes were paid." *Id.* ¶ 25.

Defendants demanded Plaintiff refund the pension and annuity payments. *Id.* ¶¶ 24, 26. Plaintiff requested that Trustee Defendants set forth their proposed resolution of the dispute in writing. *Id.* ¶ 30. The Trustee Defendants responded with an "ultimatum" on December 21, 2016: Plaintiff was to retire on December 29, 2016 or be terminated. *Id.* ¶ 31. According to Plaintiff, acceptance of the ultimatum would have resulted in the forfeiture of over $1,000,000 in compensation owed under the Employment Contract. *Id.* ¶ 32. Plaintiff avers that he never received an adequate explanation of the purported self-dealing and submits that "it is now clear that a deliberate pre-judgment had been reached." *Id.* ¶¶ 46-47. In Plaintiff's view, he "responded without reservation [to the allegations] and with full clarity about the proper exercise of his rights . . . ." *Id.* ¶ 47. Consequently, Plaintiff declined to retire. *Id.* ¶ 33.

On December 22, 2016, the Trustee Defendants' attorney directed Plaintiff "to clear out his office that night . . . and not return." *Id.* ¶ 36. Since that date, Defendants have withheld

various forms of compensation owed to Plaintiff. Specifically, Defendants froze payment of Plaintiff's Deferred Pension Supplement, "denied [him] access to his annuity account under the New Jersey Carpenters' Annuity Plan," and denied him continued payment of his salary and other benefits owed under the Employment Contract.[5] *Id.* ¶¶ 38-40; *see also id.* ¶¶ 52-55, 57-59.

Plaintiff submits that he has satisfied all administrative requirements to receive his retirement benefits, "and such action has been confirmed in writing by the Funds['] attorney."[6] *Id.* ¶ 56; *see also id.* ¶ 81. Notwithstanding his applications for benefits, Defendants have ignored the relevant claims procedures "by admitting that [Plaintiff] was entitled to his benefits and illegally withholding same for which there is no provision under ERISA which allows the [Trustee Defendants] to withhold the benefits." *Id.* ¶ 78. In sum, Plaintiff asserts that the Trustee Defendants' accusations and denial of benefits were fraudulent, malicious, and illegal. *Id.* ¶¶ 48, 58-59, 97, 121. Plaintiff calculates his losses to exceed $1,900,000. *Id.* ¶ 59.

### 3. Defendants' Allegations

Defendants tell a very different story. They submit that Plaintiff admitted at the December 20, 2016 meeting that he "unilaterally concluded that he was entitled to begin collecting his Base Pension" upon turning sixty-five and "used his authority as Administrator to cause the [Benefit Fund Defendants] to begin the distribution of his Base Pension in October 2015, without seeking or obtaining the approval of the Board of Trustees." Answer & Countercls. ¶ 23. Defendants allege that that the distribution of the Base Pension prior to Plaintiff's retirement violated the

---

[5] Plaintiff has been receiving his Base Pension since January 1, 2017. *See id.* ¶ 4.

[6] In a correspondence dated December 12, 2017, defense counsel confirmed that the Trustee Defendants considered Plaintiff's request for a distribution from his Annuity Fund account at their December 5, 2017, meeting; and concluded that "an administrative appeal with respect to [Plaintiff's] request for a distribution from his Annuity account is not required." Cert. of Peter W. Till, Esq., Ex. D, Feb. 16, 2018, D.E. 102-5.

express terms of the New Jersey Carpenters and Northeast Carpenters Pension Plans. *See id.* ¶¶ 4, 177-78. With respect to the Deferred Pension Supplement, Defendants aver that "Plaintiff also admitted . . . that he unilaterally construed his Employment Agreements to entitle him to [the Deferred] Pension Supplement in the amount of $14,729 per month[] and used his authority as Administrator to cause the [Benefit Fund Defendants] to begin the distribution of the Pension Supplement on October 1, 2015." *Id.* ¶ 23; *see also id.* ¶¶ 179-80. Finally, Defendants allege that

> Plaintiff also admitted . . . that for many years, he used his authority as Administrator . . . to unilaterally increase his monthly pay by the amount of contributions that should have been made by the NJ Pension Fund to the NJ Annuity Fund on his behalf under his Employment Agreements *plus* an amount equal to the amount of contributions that *would not have been made* to the Annuity Fund because of the cap imposed by Section 401(a)(17) of the Internal Revenue Code.

*Id.* ¶ 23*; see also id.* ¶ 181-82.

By way of the "ultimatum" dated December 21, 2019, Defendants informed Plaintiff that the aforementioned self-dealing violated ERISA, the terms and conditions set forth in the Employment Contract, and the terms of relevant benefit plans. *See id.* ¶¶ 31, 177-82; Ex. B, D.E. 146-2. Defendants submit that "the Trustee Defendants had the right to terminate Plaintiff's employment with or without cause, at any time, and were required as fiduciaries to terminate Plaintiff's employment once Plaintiff admitted to the self-dealing transactions . . . ." *Id.* ¶ 32.

After terminating Plaintiff for cause, the Trustee Defendants approved the distribution of his Base Pension "but without waiver of [their] right to a set-off against Plaintiff's Base Pension equal to the amount of Base Pension payments that Plaintiff impermissibly received from October 2015 to December 2016." *Id.* ¶ 4. Conversely, "the Board of Trustees suspended the payment of the [Deferred] Pension Supplement effective December 20, 2016, in light of Plaintiff's admissions of self-dealing transactions . . . and pending further review of the enforceability of the Employment

Agreements and the legality of the Pension Supplement, as well as this Court's approval of a set off against the Pension Supplement." *Id.* ¶ 38. With respect to the annuity account, the Trustee Defendants suspended the distribution of payments pending Plaintiff's repayment of his excessive payments pursuant to Section 206(d)(4) of ERISA. *Id.* ¶ 39.

The Trustee Defendants also retained a forensic accountant to further investigate Plaintiff's suspected self-dealings. *Id.* ¶ 183. Following the investigation, Defendants determined that Plaintiff collected unauthorized automobile bonuses, holiday bonuses, and other non-specific bonuses; extended pensions and benefits coverage to unqualified persons; and retained an Apprentice Fund master cabinetmaker to construct two dining room tables for his home without Trustee approval. *See id.* ¶¶ 185-215.

Defendants also contest the validity of the Employment Contract and Deferred Pension Supplement. *See id.* ¶¶ 170-76. Defendants assert "Plaintiff knowingly and intentionally failed to disclose the existence of the 1998 Agreement" during the 2016 merger negotiations between the New Jersey Carpenters Funds and the Empire State Carpenters Funds. *Id.* ¶ 176. Defendants thus contend that

> [t]he Northeast Health Fund Trustees failed to assume or agree to the [Employment Contract] . . . nor did the Merger Agreement . . . require the Northeast Pension Fund [to] assume and become bound by the Pension Supplement provisions in the 1998 Agreement, as amended by the 2005 Amendment.

*Id.* In regard to the Deferred Pension Supplement, Defendants submit "Plaintiff requested and regularly received reports from the actuary for the New Jersey Pension Benefit Fund disclosing the value of his Pension Supplement and the financial impact on his Pension Supplement of an increase in his salary." *Id.* ¶ 170. According to Defendants, Plaintiff had an obligation to disclose the financial terms of his employment to the Trustee Defendants whenever he requested or

negotiated an increase in salary, but consistently failed to do so.  *See id.* ¶¶ 171-74.  Defendants aver that "Plaintiff's concealment [of those details] caused the Trustees to unknowingly increase the value of his [Deferred] Pension Supplement to what is now an excessive, unreasonable, and unenforceable amount."  *Id.* ¶ 175.

### 4.  Procedural History

Plaintiff instituted this civil action on February 21, 2017.  *See* Complaint, D.E. 1.  In an Amended Complaint filed shortly thereafter, Plaintiff alleged eleven causes of action:  (1) breach of fiduciary duties under Section 502 of ERISA, (2) breach of fiduciary duties under Section 503 of ERISA, (3) failure of Defendants to exhaust administrative remedies under ERISA, (4) fraud, (5) equitable fraud, (6) negligent misrepresentation, (7) unjust enrichment, (8) breach of contract, (9) common law fraud, (10) conversion, and (11) breach of the implied covenant of good faith and fair dealing.  *See* Am. Compl., April 4, 2017, D.E. 57.  In addition to the Benefit Fund and Trustee Defendants, Plaintiff also brought claims against the Northeast Regional Council of Carpenters and various union officials ("Council Defendants").

The Council Defendants moved to dismiss the complaint for failure to state a claim upon which relief may be granted.  *See* Council Defs.' Mot. to Dismiss, Apr. 17, 2017, D.E. 64.  The Honorable Madeline Cox Arleo, U.S.D.J., granted the Council Defendants' motion on November 8, 2017, and dismissed the Amended Complaint.[7]  Order, D.E. 95.  The Court found that "each of Plaintiff's state law causes of action is based on the transactions and events underlying Plaintiff's ERISA claims and each includes a request for relief in the form of ERISA plan benefits."  *Id.* at 2. The Court thus held that "Plaintiff's state law claims, Counts Four through Eleven, are preempted

---

[7]  While the Council Defendants' motion was pending, Plaintiff and the Council Defendants stipulated to the dismissal without prejudice of those claims.  Stip. of Dismissal, Sept. 8, 2017, D.E. 87.

by ERISA[.]" *Id.* With respect to the ERISA claims pled as Counts One and Two, the Court held that "Plaintiff has failed to exhaust his administrative remedies or allege the futility of doing so . . . ." *Id.* Finally, the Court held that Count Three, which alleged that Defendants failed to exhaust certain remedies, did not state a claim upon which relief may be granted. *Id.* at 2-3, n.4. Judge Arleo thus dismissed the Amended Complaint and ordered that "Plaintiff may re-plead his two ERISA claims after exhausting administrative remedies or alleging the futility of doing so, and may proceed only against the plans at issue and the administrators in their official capacities." *Id.* at 3-4. The Clerk's Office administratively terminated this action on November 20, 2017.

On February 16, 2018, Plaintiff reopened the matter by filing a Second Amended Complaint along with a "Motion for Expedited Relief." *See* Motion to Expedite, D.E. 102; Second Am. Compl., D.E. 103. In an accompanying certification, Plaintiff's counsel attested, *inter alia*, that Plaintiff had followed the administrative procedures required to obtain his benefits. *See* Cert. of Peter W. Till, Esq., ¶¶ 8-13, Feb. 16, 2018, D.E. 102-1. Defendants answered the Second Amended Complaint and asserted two counterclaims against Plaintiff. Answer to Second Am. Compl. with Affirmative Defenses and Am. Countercls., Mar. 14, 2018, D.E. 105. Defendants thereafter filed a motion for judgment on the pleadings pursuant to Rule 12(c). *See* Mot. for J. on the Pleadings, June 13, 2018, D.E. 112. Plaintiff opposed the motion and filed a cross-motion to amend the complaint *nunc pro tunc*. *See* Pl.'s Cross-Mot. to Amend, July 27, 2018, D.E. 120. On October 2, 2018, this Court denied both parties' motions without prejudice.[8] Order, D.E. 125. Specifically, this Court ordered that Plaintiff may file a renewed motion to amend the complaint, and that Defendants reserved the right to refile their Rule 12(c) motion at a later date. *Id.*

---

[8] On June 22, 2018, the parties consented to the Undersigned's jurisdiction for all proceedings. *See* Consent to Jurisdiction by U.S. Mag. Judge, D.E. 114.

Plaintiff timely filed a motion to amend, which this Court granted on February 15, 2019. *See* Order, D.E. 141. The Third Amended Complaint, which is the operative pleading in this action, includes two new claims in addition to the eleven causes of action that were the subject of the November 8, 2017, Order.[9] *See* Third Am. Compl., March 18, 2019, D.E. 145. Count Four alleges that Defendants "illegally and wrongfully terminated the Plaintiff's health coverage when they severed his employment." *Id.* ¶ 89. Count Thirteen, titled Fraudulent Concealment, alleges that Defendants intentionally destroyed relevant evidence. *See id.* ¶¶ 60-67, 142-47. Defendants filed an answer along with two counterclaims. In the First Counterclaim, Defendants seek to recoup the losses allegedly caused by Plaintiff's self-dealings. Answer & Countercls., ¶ 217. Defendants have now renewed their motion for judgment on the pleadings. Mot. for J. on the Pleadings, May 13, 2019, D.E. 150.

## III. ANALYSIS

"Federal Rule of Civil Procedure 12(c) permits a party to dismiss a suit '[a]fter the pleadings are closed . . . but early enough not to delay trial.'" *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018) (alterations in original) (quoting Fed. R. Civ. P. 12(c)). "Judgment on the pleadings under Rule 12(c) will not be granted 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Lake v. Aetna Life Ins. Co.*, 54 F. Supp. 3d 331, 334 (D.N.J. 2014) (quoting *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994)).

---

[9] Defendants did not oppose Plaintiff's repleading of the common law claims that were deemed preempted by ERISA in the November 8, 2017, Order. *See* Defs.' Proposed Order on Pl.'s Mot. to Amend, D.E. 127-1. Nor did they assert that Plaintiff failed to exhaust his administrative remedies in connection with his ERISA claims.

Defendants request this Court dismiss the Third Amended Complaint for failure to state a claim upon which relief may be granted and enter partial judgment in their favor on the First Counterclaim. *See* Proposed Order, D.E. 150-3. "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010)). That analysis involves three steps:

> First, [the Court] will note the elements of a claim; second, [the Court] will identify allegations that are conclusory and therefore not assumed to be true, and; third, accepting the factual allegations as true, [the Court] will view them and reasonable inferences drawn from them in the light most favorable to [the non-movant] to decide whether they plausibly give rise to an entitlement to relief. Pleadings that establish only a mere possibility of misconduct do not show entitlement to relief.

*Sweda v. Univ. of Pa.*, 923 F.3d 320, 326 (3d Cir. 2019) (internal quotation marks and citations omitted). At the final step, the Court "must narrowly confine its inquiry to the allegations of the pleadings and their exhibits, matters of public record, and undisputedly authentic documents that form the basis of the claims." *EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 348 (D.N.J. 2019). Critically, the Court's "job is not to dismiss claims that [it] think[s] will fail in the end," but only to decide whether Plaintiff has pled "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' each element." *United States ex rel. Bookwalter v. UPMC*, 938 F.3d 397, 405 (3d Cir. 2019) (third alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009).

Defendants' request for judgment on the First Counterclaim is an "offensive Rule 12(c) motion," which "resembles a plaintiff's motion for summary judgment in advance of discovery." *Churchill Downs, Inc. v. NLR Entrm't, LLC*, No. 14-3342, 2015 WL 5854134, at *9 (D.N.J. Oct.

5, 2015) (internal quotation marks omitted). "The premise of such a motion is that the answer has admitted or failed to deny the essential facts, and that the plaintiff is entitled to judgment as a matter of law." *Id.* Stated differently, "a plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." 5C Wright & Miller, *Federal Practice & Procedure*, § 1368 (3d ed. 2008).

The Third Amended Complaint and First Counterclaim implicate ERISA, which serves as the backdrop for the Court's analysis. *See Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011). "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotation marks and citations omitted). If an employer chooses to maintain a retirement benefit plan, "ERISA . . . seek[s] to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Lockheed Corp. v. Spink,* 517 U.S. 882, 887 (1996).

Because the offering of such plans is voluntary, "ERISA represents a 'careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.'" *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004)). "ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'" *Id.* (alterations in original) (quoting *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 379 (2002)). To ensure those predictable outcomes, "ERISA possesses 'extraordinary pre-emptive power.'" *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293 (3d Cir. 2014) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). In addition to including an express preemption provision

regarding any state law that "relate[s] to" an ERISA plan, *see* 29 U.S.C. § 1144(a), Congress also "intended for the causes of action available under ERISA § 502 to be the exclusive vehicle for actions by ERISA plan participants asserting improper plan administration," *Menkes*, 762 F.3d at 294.

In choosing to regulate certain retirement benefits plans, Congress also emphasized ERISA's protective function. *See* 29 U.S.C. § 1001(a) (declaring that ERISA reflects Congress's desire "that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans"). "ERISA defines the circumstances under which a person or entity is a fiduciary, sets forth the duties of these fiduciaries, and provides various causes of action designed to promote the enforcement of these duties." *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013). "Section 404 requires fiduciaries to discharge their duties 'solely in the interest of the participants and beneficiaries . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity' would use." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 81-82 (3d Cir. 2012) (alterations in original) (quoting 29 U.S.C. § 1104(a)(1)). "Supplementing that foundational obligation is § 406, which prohibits plan fiduciaries from entering into certain transactions." *Id.* at 82. ERISA imposes personal liability on fiduciaries whose breach of their duties or engagement in prohibited transactions results in losses to the plan. *See* 29 U.S.C. § 1109. "[A] recovery under Section 409 for damages for breach of fiduciary duty does not go to any individual plan participant or beneficiary, but inures to the benefit of the plan as a whole." *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-41 (1985)).

Not every agreement providing retirement benefits falls within the purview of ERISA, however. *See* 29 U.S.C. § 1002(1),(2) (defining "employee welfare benefit plan" and "employee

pension benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both," for the purpose of providing health and death benefits or retirement income); *see also Shaver v. Siemens Corp.*, 670 F.3d 462, 475 (3d Cir. 2012) (noting that hallmarks of an ERISA plan include intended benefits, a class of beneficiaries, a source of financing, and procedures for receiving benefits). "One of the touchstones of a plan that is governed by ERISA is the 'establishment and maintenance of a separate and ongoing administrative scheme,' which the plan administrator must set up in order to determine eligibility for benefits." *Menkes*, 762 F.3d at 290 (quoting *Shaver*, 670 F.3d at 476). "[A]n ERISA administrative scheme may arise where the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria." *Shaver*, 670 F.3d at 477 (internal quotation marks and citation omitted).

> Factors relevant to determining whether an employer's undertakings have created an ERISA plan also include whether the undertaking requires managerial discretion, that is, whether the undertaking could not be fulfilled without ongoing, particularized, administrative, analysis of each case and whether a reasonable employee would perceive an ongoing commitment by the employer to provide some employee benefits. On the other hand, simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme.

*Id.* (internal quotation marks and citations omitted) (brackets removed).

With these principles in mind, the first issue this Court must resolve is whether payment of the Deferred Pension Supplement constitutes an ERISA plan. Defendants argue that ERISA does not govern the Deferred Pension Supplement because the arrangement involves "a fixed formula" and "no discretionary decisions by the employer as to whether the payment is owed." Defs.' Br. at 51, D.E. 150-1. In Defendants' view, "[t]hose circumstances do not give rise to a

continuing or ongoing administrative scheme such as is necessary for the existence of an ERISA plan." *Id.* Plaintiff disagrees. Pl.'s Br. at 15, 19, 21, D.E. 154. Although Plaintiff does not offer any support, he submits "there surely is an administrative scheme which exists." *Id.* at 21.

The Court concludes that the Deferred Pension Supplement does not fall within the purview of ERISA because the payment of the amounts due does not involve the establishment and maintenance of a separate and ongoing administrative scheme. Plaintiff's entitlement to the funds does not involve any discretionary determination. Rather, the preconditions for the Deferred Pension Supplement are the attainment of the retirement age and separation from employment. *See* Answer & Countercls., Ex. A, D.E. 146-1 at 15-16. In that regard, it is immaterial whether Plaintiff voluntarily retires, or Defendants terminate him with or without cause. Once the payments are triggered, they are doled out mechanically each month in an amount determined by a one-time computation. *Id.* at 16. Article Four also permits Plaintiff to elect to receive the Deferred Pension Supplement as a one-time lump sum payment in the case that his employment is severed. *See id.*

In short, there is no "plan" to administer because there is nothing discretionary about the Plaintiff's eligibility for, and the timing, form, and amount of the Deferred Pension Supplement. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987) (holding that severance payment is not an ERISA plan because "[t]o do little more than write a check hardly constitutes the operation of a benefit plan"); *Girardot v. The Chemours Co.*, 731 F. App'x 108, 111 (3d Cir. 2018) ("ERISA plans 'involve administrative activity potentially subject to abuse,' reflecting the statute's purpose to protect the administrative integrity of benefit plans." (quoting *Fort Halifax*, 482 U.S. at 16)); *Shaver*, 670 F.3d at 477 (positing that "simple or mechanical determinations do not necessarily require the establishment of [] an administrative scheme" (internal quotation marks omitted)).

Against that backdrop, the Court now turns to the two central inquiries at hand: (1) whether the Third Amended Complaint contains sufficient factual allegations, accepted as true, to state a claim to relief that is plausible on its face; and (2) whether Defendants are entitled to judgment as a matter of law on the First Counterclaim.

1. **Dismissal of the Third Amended Complaint**

    a. **Count One: Breach of Fiduciary Duties Under Sections 502(a)(1)(B) and 502(a)(3) of ERISA**

Court One purports to state breach of fiduciary duty claims under Sections 502(a)(1)(B) and 502(a)(3). *See* Third Am. Compl. ¶¶ 69-73. As presently pled, Count One fails to state a claim for relief.

Section 502(a)(1)(B) authorizes a plan participant or beneficiary to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As the statute's plain language suggests, the crux of a claim under Section 502(a)(1)(B) is the plan's terms. *See Heimeshoff v. Hartford Life & Accident. Ins. Co.*, 571 U.S. 99, 108-09 (2013). The plaintiff must demonstrate that he or she has an enforceable right to benefits—benefits that are actually "due" under the plan—and that the administrator or responsible party denied those benefits. *See Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). "Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987).

It is well-recognized that "[Section] 502(a)(1)(B) does not create a private cause of action for breach of fiduciary duty." *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *8 (D.N.J. Oct. 31, 2018) (alteration in

original) (quoting *Michaels v. Breedlove*, No. 03-4981, 2004 WL 2809996, at *2 (3d Cir. Dec. 8, 2004)); *accord Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1501 (3d Cir. 1994); (reaffirming prior holding that "plaintiffs [cannot] proceed under section 502(a)(1)(B) in a suit to recover damages for a breach of fiduciary duty"). On the other hand, "Section 502(a)(3) authorizes equitable relief directly to a participant or beneficiary to redress any act or practice which violates any provision of ERISA, including a breach of the statutorily created fiduciary duty of an administrator." *Hocheiser v. Liberty Mut. Ins. Co.*, No. 17-6096, 2018 WL 1446409, at *5 (D.N.J. Mar. 23, 2018) (citing *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1298 (3d Cir. 1993)). That is so because Section 502(a)(3) is a "catchall" provision, "offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

But where the claim for "appropriate equitable relief" pursuant to Section 502(a)(3) is duplicative of a claim for benefits due under Section 502(a)(1)(B), some courts have dismissed the Section 502(a)(3) claim at this stage of the litigation as redundant. *See, e.g.*, *Plastic Surgery Center, P.A. v. Cigna Health and Life Ins. Co.*, No. 17-2055, 2018 WL 2441768, at *14 (D.N.J. May 31, 2018) (dismissing Section 502(a)(3) claim as "wholly duplicative" of claim alleging wrongful denial of benefits "in that it is based on the same conduct and seeks relief otherwise available under [Section] 502(a)(1)(B)"); *In re Aetna UCR Litig.*, No. 07-3541, 2015 WL 3970168, at *16 (D.N.J. June 30, 2015) (holding that "plaintiffs cannot avoid dismissal [of their Section 502(a)(3) claim] merely by labelling their claim for unpaid benefits as one for prospective, equitable relief" and that plaintiffs "fail[ed] to adequately distinguish their claim under Section 502(a)(3) from their claim for benefits under Section 502(a)(1)(B)"); *cf. Varity Corp.*, 516 U.S. at 515 (noting that "where Congress elsewhere provided adequate relief for a beneficiary's injury,

there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'").

Other courts have disagreed. *See Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, No. 16-9253, 2017 WL 3610486, at *4 (D.N.J. Aug. 22, 2017) (declining to dismiss breach of fiduciary duty claim on Rule 12(b)(6) motion because "the Court cannot state with certainty the precise nature of [the plaintiff's injuries] or the appropriateness of any particular remedy, and thus cannot determine whether its claim under Section 502(a)(3) is coterminous with its claim under Section 502(a)(1)(B)"); *Shah v. Aetna*, No. 17-195, 2017 WL 2918943, at *2 (D.N.J. July 6, 2017) (collecting cases). In their view, dismissal at the motion-to-dismiss stage is premature because a factual record should be developed to determine whether the claims are indeed duplicative and to avoid requiring a plaintiff to choose among alternative legal theories.

Here, Count One seeks to enforce Plaintiff's right to benefits under the Annuity Plan. Plaintiff alleges that he is entitled to his benefits by virtue of having reached the requisite retirement age and having submitted a request for a lump sum distribution. Third Am. Compl. ¶¶ 4, 11. He submits that Defendants "continue[] to wrongfully withhold payment and otherwise deny [him] access to those annuity account funds and there is no indication that said annuity account payments will be resumed any time now or in the future." *Id.* ¶ 39. Plaintiff thus contends that Defendants' withholding of his benefits under the Annuity Plan "is a direct violation of [their] fiduciary duties . . . pursuant to Sections 502(a)(1)(B) and 502(a)(3)." *Id.* ¶ 73. By way of remedy, Plaintiff demands "immediate restoration of payments of the benefits to which he is entitled";

"[r]eimbursement of previously withheld benefits"; attorneys' fees, costs, and interest; and "such other relief as the Court deems just and proper." *Id.*, Wherefore Clause, Count One.[10]

In this Court's view, Count One is nothing more than a garden-variety, denial-of-benefits claim that has been improperly pled as a breach of fiduciary duty claim. *See Atl. Plastic & Hand Surgery, PA*, 2018 WL 5630030, at *9. To the extent that Plaintiff predicates his requested relief on *both* Section 502(a)(1)(B) and Section 502(a)(3), the inadequacy of the pleading renders dismissal of the Section 502(a)(3) claim appropriate under these circumstances. The Third Amended Complaint does not identify the fiduciary duties that Defendants allegedly breached or any other malfeasance in connection with his Annuity Fund benefits. In short, there is no misconduct alleged that could be remedied by "appropriate equitable relief" under Section 502(a)(3). *See Plastic Surgery Ctr., P.A.*, 2018 WL 2441768 at *14 (dismissing Section 502(a)(3) claim and expressing "no view on whether a plaintiff is barred, under any circumstances, from simultaneously pursuing claims under § 502(a)(1)(B) and § 502(a)(3)" because Section 502(a)(3) claim at issue "is premised on allegations for which other sections of ERISA provide an adequate remedy"). The Court agrees with Defendants that Plaintiff's claim for restoration of his benefits "is more properly brought under [Section] 502(a)(1)(B)." Defs.' Br. at 27.

Turning to the remaining allegations, the Court finds them to be insufficient under the pleading standards set forth in *Twombly* and *Iqbal*. Plaintiff has not pled any non-conclusory allegations establishing his right to benefits under the Annuity Fund. Nor has he explained how Defendants wrongfully denied those payments. Without referencing the terms of the benefit plan or explaining how Defendants' actions were wrong, Plaintiff's claim fails to raise his right to relief

---

[10] Plaintiff has withdrawn his claims for compensatory and punitive damages. Pl.'s Sur-Reply at 2-3, D.E. 165.

above a speculative level. *See Twombly*, 550 U.S. at 555; *Atl. Plastic & Hand Surgery, PA*, 2018 WL 5630030, at *7 (dismissing denial-of-benefits claim based on the plaintiff's failure to identify any specific plan provision entitling plaintiff to benefits); *Piscopo v. Public Serv. Elec & Gas Co.*, No. 13-552, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015) (dismissing ERISA claim because the plaintiff had "not pointed to any provision of a [] benefit plan suggesting he is entitled to pension or retirement contributions nor has he alleged any facts about the plan"), *aff'd*, 650 F. App'x 106 (3d Cir. 2016).

Accordingly, the Court will dismiss Count One without prejudice to the filing a motion for leave to amend the complaint to remedy the aforementioned deficiencies. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Mills v. Ethicon, Inc.*, -- F. Supp. 3d. --, 2019 WL 4053880, at *16 (D.N.J. Aug. 27, 2019). Specifically, Plaintiff may move for leave to state a Section 502(a)(1)(B) claim predicated on the denial of benefits owed under the Annuity Plan and/or a Section 502(a)(3) claim predicated on the breach of a specified fiduciary duty.

### b. Count Two: Breach of Fiduciary Duties under Section 503

Count Two alleges that Defendants breached unspecified fiduciary duties by failing to establish or follow a reasonable claims procedure pursuant to Section 503 of ERISA and 29 C.F.R. § 2560.503-1. Third Am. Compl. ¶¶ 74-82. Plaintiff submits that "Defendants ignored the procedures by admitting that the plaintiff was entitled to his benefits and illegally withholding same . . . ." *Id.* ¶ 78. He avers that Defendants failed to comply with the notification regulations and did not provide him an opportunity to appeal Defendants' seizure and withholding of his benefits. *Id.* ¶ 79. Plaintiff demands "immediate restoration of payments of the benefits to which he is entitled"; "[r]eimbursement of previously withheld benefits"; attorneys' fees, costs, and

interest; and "such other relief as the Court deems just and proper." *Id.*, Wherefore Clause, Count Two.

Section 503 prescribes that, in accordance with the regulations promulgated by the Secretary of Labor, all employee benefit plans shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The corresponding regulation elaborates on what constitutes "reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations." 29 C.F.R. § 2560.503-1(b). It further prescribes that

> in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

*Id.* § 2560.503-1(l)(1).

The Court will dismiss Count Two because Section 503 and 29 C.F.R. 2560.503-1 do not provide for a private cause of action. *Shah*, 2017 WL 2918943, at *3. It is well-settled that "the remedy for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review." *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000); *accord Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 856 (3d Cir. 2011). "Rather than serve as a basis for an independent cause of action, noncompliance with these disclosure obligations is probative of whether a denial of benefits was arbitrary or capricious." *Bloomfield Surgical Ctr. v. Cigna Health*

& *Life Ins. Co.*, No. 16-8645, 2017 WL 2304642, at *3 (D.N.J. May 25, 2017); *see also Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan*, 854 F.2d 1516, 1532 (3d Cir. 1988) (noting "the general principle that an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy"). Dismissal with prejudice is appropriate because Count Two is legally inadequate and cannot be remedied by repleading different facts. *See United States ex rel. Schumann v. AstraZeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).

### c.  Count Three:  Exhaustion of Administrative Remedies

In Count Three, Plaintiff avers that Defendants wrongfully withheld his benefits despite being bonded as fiduciaries pursuant to Section 412 of ERISA.  Third Am. Compl. ¶¶ 84-87. Plaintiff submits that he and Defendants "were covered by a fiduciary liability insurance policy or policies."  *Id.* ¶ 86.  In Plaintiff's view, "Defendants have an absolute obligation to pay Plaintiff's benefits and then bring a claim under the insurance policy."  *Id.* ¶ 87.

The Court will dismiss this claim with prejudice.  Section 412 generally requires fiduciaries to be bonded in order to protect plans from risk of loss due to fraud or dishonesty.  *See* 29 U.S.C. § 1112.  That Section does not require—or even address—the processing of benefits.  Plaintiff has provided no authority to support the supposition that Defendants, or plan administrators or fiduciaries in general, are obligated to pay disputed benefits within the purview of Section 412 and then seek recourse from the surety or insurer.  Having failed to articulate a cognizable cause of action, dismissal with prejudice is warranted.  *See Schumann*, 769 F.3d at 849.

### d.  Count Four: Failure to Maintain and Honor Medical Coverages

Plaintiff next asserts that Defendants wrongfully terminated his health benefits.  Third Am. Compl. ¶¶ 89-94.  Plaintiff alleges that he "was a duly certified member" of the Northeast

Carpenters Union, and therefore, is "entitled to retiree medical benefits as available to all Union members." *Id.* ¶¶ 89-90. According to Plaintiff, "the terms and conditions of Union membership provided for the full complement of medical coverage to the Plaintiff." *Id.* ¶ 91. Plaintiff submits that Defendants' denial of benefits has caused him "to separately incur all medical expenses resulting in substantial economic decline which would have been otherwise protected under the terms and conditions of Union membership." *Id.* ¶ 93.

Defendants note that "the Fourth Count does not assert a statutory basis for the claim" and construe it as Section 502(a)(1)(B) claim. Defs.' Br. at 30. In turn, Defendants point out that Plaintiff has failed to identify any specific term—whether in an applicable collective bargaining agreement or the Northeast Carpenters Health Plan—that supports his claim for lifetime health benefits. *Id.* at 31. To the contrary, Defendants stress, the Employment Contract *limits* Plaintiff's entitlement to health benefits under the applicable health plan to "the term of this Agreement and any extension thereof." *Id.* at 32 (quoting Answer & Countercls., Ex. A, D.E. 146-1 at 6). Defendants thus submit that Count Four must be dismissed for failure to state a claim.

The Court agrees but will dismiss Count Four without prejudice to the filing of a motion for leave to amend to identify the contractual basis for Plaintiff's claim to lifetime health benefits. *See M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 135 S. Ct. 926, 936-37 (2013) (stating that collective bargaining agreements may expressly provide for lifetime benefits but holding that "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life"); *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006) ("ERISA requires that any contractually accrued rights be discernible from the written terms of the formal ERISA plan documents themselves." (internal quotation marks omitted)).

### e. Counts Five through Twelve:  State Law Causes of Action

Counts Five through Twelve of the Third Amended Complaint allege various contract and tort claims under New Jersey law.  To the extent that these claims are predicated on the parties' rights and obligations under the benefit plans, the claims are preempted by ERISA.  With respect to the claims related to the Employment Contract's provision of a salary and the Deferred Pension Supplement, the Court will grant in part and deny in part the motion to dismiss those claims.

### i. ERISA Preemption

ERISA preempts state law, whether statutory or arising from common law, that "relate[s] to any employee benefit plan."  29 U.S.C. § 1144(a); *see also Nat'l Sec. Sys., Inc.*, 700 F.3d at 83 (noting that state common law claims are subject to ERISA preemption).  "[A] state law 'relate[s] to' a benefit plan . . . if it has a connection with or reference to such a plan."  *Pilot Life Ins. Co.*, 481 U.S. at 47 (internal quotation marks and citations omitted).  A state law claim is expressly preempted by ERISA if "the existence of an ERISA plan [is] a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan."  *1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers,* 968 F.2d 401, 406 (3d Cir. 1992)*; see also Menkes*, 762 F.3d at 295-96 ("Where liability is predicated on a plan's administration, ERISA preempts state law claims because a 'benefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan.'" (quoting *Aetna Health*, 542 U.S. at 219)).  As part of this inquiry, courts "also look to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as the nature of the effect of the state law on ERISA plans.'"  *Nat'l Sec. Sys., Inc.*, 700 F.3d at 84 (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997)).

To prevail on his fraud and negligent misrepresentation claims (Counts Five, Six, Seven, and Ten), Plaintiff must prove reliance on a material misrepresentation. *See Banco Popular N. Am. v. Gandi,* 876 A.2d 253, 261 (N.J. 2005) ("Misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them."); *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195-96 (N.J. 2000) ("The actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission. The element of reliance is the same for fraud and negligent misrepresentation."). Plaintiff bases these claims in part on the parties' rights and obligations under the various benefit plans. Specifically, Plaintiff alleges that, "[t]hroughout the course of dealing with the Benefit Funds, the Defendants through the Trustees made statements written or oral to the effect that these were legitimate contractual payments and benefits to which the Plaintiff was fully entitled." Third Am. Compl. ¶ 121. Plaintiff avers that he "reasonably relied on the . . . terms and conditions of the Benefit Funds," *id.* ¶ 98, and that "Defendants have deceived Plaintiff and defrauded [him] by withholding and freezing the above funds due to the Plaintiff," *id.* ¶ 127.

The adjudication of the aforementioned claims would require the Court to assess Defendants' putative misrepresentations in light of the express terms and conditions of the Annuity Plan. Accordingly, ERISA preempts Counts Five, Six, Seven, and Ten to the extent that the putative misrepresentations relate to the improper denial of benefits. *See Menkes*, 762 F.3d at 295-96 ("This type of analysis—concerning the accuracy of statements . . . to plan participants in the course of administering the plans—sits within the heartland of ERISA, and ERISA expressly preempts these claims." (alteration in original) (internal quotation marks omitted)).

ERISA also preempts Plaintiff's contract-based claims (Counts Eight, Nine, and Twelve) and the conversion claim (Count Eleven) to the extent that these claims relate to the administration

of the ERISA plans. Plaintiff alleges that Defendants' retention of Plaintiffs' retirement benefits is "in breach of . . . the provisions of the Benefit Funds." Third Am. Compl. ¶ 117. He further asserts that "[i]n entering into the[se] contracts, Defendants impliedly covenanted that they would deal with the Plaintiff fairly and in good faith and would not capriciously or without good cause deprive [him] of the benefits under the Benefit Funds . . . ." *Id.* ¶ 139. Plaintiff alternatively alleges that "[b]y virtue of Defendants['] retention of said funds, Defendants have been unjustly enriched." *Id.* ¶ 114. Finally, Count Eleven alleges that Defendants "misappropriat[ed] and convert[ed]" Plaintiff's assets under the benefit plans.[11] *Id.* ¶¶ 132-35. "Because these claims explicitly require reference to the plan[s] and what [they] cover[], they are expressly preempted." *Menkes*, 762 F.3d at 296.

### ii. State Law Claims Related to the Employment Contract

The Court reaches a different result with respect to the state law claims as they relate to the Employment Contract. Plaintiff asserts that the renewal of the Employment Contract for an additional five-year term in 2015 entitles him to continued payment of his salary, notwithstanding his termination. Third Am. Compl. ¶¶ 40, 52-54. Plaintiff further submits that he is entitled to payment of the Deferred Pension Supplement. *Id.* ¶¶ 38, 57. In seeking the dismissal of the fraud and contract-based claims, Defendants assert that ERISA preemption still applies; Plaintiff's fraud-based claims fail to satisfy the heightened pleading standard under Rule 9(b); and the contract-based claims are deficient as a matter of law. Defs.' Br. at 33-39. The Court addresses each contention in turn.

---

[11]  In Counts Eight, Nine, and Twelve, Plaintiff refers to both the relevant benefit plans and the Employment Contract. *See, e.g.*, ¶¶ 117, 139. As discussed below, ERISA does not preempt these claims to the extent that they are based on the Employment Contract. On the other hand, because the conversion claim in Count Eleven is directed solely at ERISA benefits, *see id.* ¶ 132, Count Eleven is dismissed in its entirety with prejudice.

Defendants assert that Plaintiff's misconduct as Plan Administrator and as a fiduciary violated Sections 404 and 406, and therefore, "a state law claim that the [Employment Contract] protected Plaintiff's employment . . . would severely undermine ERISA's imposition of heightened duties of care and loyalty on a Plan Administrator." Defs.' Br. at 36. Although Defendants concede that they were unable to locate any supporting case law, they submit that the Trustee Defendants, given their own fiduciary responsibilities to plan participants, "were without power or legal capacity under ERISA to promise Plaintiff that those ERISA plans would continue to pay him the salary and benefits he now seeks even if he engaged in the self-dealing and other breaches of his duties of care and loyalty to which he has admitted." *Id.* at 36-37.

The Court is unpersuaded by these preemption-based arguments. First, Plaintiff is not seeking reinstatement to his position as Plan Administrator, and thus, Defendants' concerns regarding the continuation of his employment in light of any putative breach of his fiduciary duties are misplaced. Second, the payment of Plaintiff's salary and the Deferred Pension Supplement are independent legal duties arising from the Employment Contract. Whether Defendants must continue to pay Plaintiff his salary turns on the terms of the Employment Contract and, perhaps, any extrinsic evidence related to the parties' intent in extending Plaintiff's employment for an additional five years. *See Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006). In short, these claims do not "ha[ve] a connection with" any ERISA plan. *Pilot Life Ins. Co.*, 481 U.S. at 47. Lastly, Defendants' putative contractual obligation to continue to pay Plaintiff does not interfere with Defendants' responsibilities as fiduciaries because such decisions are managerial in nature. *See N.J. Carpenters and Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (stating that "[s]tate actions to recover unpaid wages generally are not expressly

preempted by ERISA"); *Haberern*, 24 F.3d at 1503 ("ERISA does not impose fiduciary duties on employers acting in their management capacity.").[12]

Having concluded that ERISA does not preempt the state law claims arising from the Employment Contract, the Court now turns to the adequacy of the pleading of these claims.

The Court agrees with Defendants that Plaintiff's fraud claims do not meet Rule 9(b)'s heightened pleading requirements. Rule 9(b) of the Federal Rules of Civil Procedure prescribes that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 489 (D.N.J. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). The pleading must contain also "sufficient particularity to place the defendant on notice of 'the precise misconduct with which [it is] charged.'" *Frederico*, 507 F.3d at 200 (alteration in original) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)). Rule 9(b) also requires attribution of the fraudulent statement to a specific person. *Klein v. Gen. Nutrition Cos., Inc.*, 186 F.3d 338, 345 (3d Cir. 1999).

---

[12]  Defendants also contend that Plaintiff's state law claims are preempted by ERISA because "Plaintiff's salary and fringe benefits, including his Pension Supplement" are "paid out of ERISA plan assets." Defs.' Br. at 38. Neither party had identified the source of payment for Plaintiff's contractual wage-based obligations; that is, whether Defendants paid Plaintiff his salary and Deferred Pension Supplement out of Defendants' general treasury or from a trust account subject to ERISA. Accordingly, the Court finds that Defendants have not met their burden of demonstrating that Plaintiff's state law claims are preempted based on that passing remark in their brief. *See Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 230 (3d Cir. 2001) (noting that "the party claiming preemption bears the burden of demonstrating that federal law preempts state law"); *DeBlasio v .Central Metals, Inc.*, No. 13-5282, 2014 WL 2919557, at *7-8 (D.N.J. June 27, 2014) (declining to dismiss state law claims on Rule 12(b)(6) motion because "Defendants bear the burden of proof" and "the Court cannot determine based on the Complaint alone whether the Policy [at issue] constitutes an ERISA plan").

The essence of Plaintiff's fraud claims appears to be that Defendants conspired to defraud Plaintiff out of the respective benefits owed under the Employment Contract and the benefit plans. *See* Third Am. Compl. ¶¶ 96-104, 120-29. However, there is little to no precision in Plaintiff's allegations; rather, the Third Amended Complaint largely just parrots the elements of a common law and equitable fraud claim. Although Plaintiff avers that Defendants' statements on or after December 20, 2016 regarding his alleged "self-dealings" were false, *see* Third Am. Compl. ¶ 97, that allegation does not get to the heart of the alleged misrepresentation—namely, that Defendants fraudulently promised Plaintiff certain contractual benefits, *see id.* ¶¶ 121, 126. In regard to that latter point, Plaintiff merely alleges that "the Defendants through the Trustees made statements written or oral to the effect that these were legitimate contractual payments and benefits to which [he] was fully entitled." *Id.* ¶ 122. Such statements—devoid of any particularity—do not vault Plaintiff over the heightened pleading standards of Rule 9(b). "The complaint must state the 'who, what, when, where, and how' of the fraudulent activity." *loanDepot.com v. CrossCountry Mortgage, Inc.*, 399 F. Supp. 3d 226, 240 (D.N.J. 2019) (quoting *Kowalsky v. Deutsche Bank Nat'l Tr. Co.*, No. 14-7856, 2015 WL 5770523, at *8 (D.N.J. Sept. 30, 2015)). Plaintiff has not done so here. Accordingly, Counts Five, Six, and Ten are dismissed without prejudice to the filing of a motion for leave to amend the complaint that comports with Rule 9(b).

Nor has Plaintiff stated a claim for negligent misrepresentation. To adequately plead a negligent misrepresentation claim, a plaintiff must allege: (1) the tortfeasor "negligently made" an "incorrect statement"; (2) the plaintiff "justifiably relied" on the statement; and (3) the plaintiff sustained an economic loss "as a consequence of that reliance." *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 142-43 (N.J. 1983); *see also Karu v. Feldman*, 574 A.2d 420, 425 (N.J. 1990) ("A cause of action for negligent misrepresentation may exist when a party negligently provides false

information."). Given that Plaintiff has only set forth conclusory allegations in Count Seven, the Court strains to identify what statements in the Third Amended Complaint could give rise to a plausible claim. Even if Defendants' statements pertaining to the alleged self-dealings were false, Plaintiff does not allege that he relied on those statements to his detriment. Accordingly, Count Seven is also dismissed without prejudice.

On the other hand, Plaintiff has adequately alleged claims for unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing. To state a claim for unjust enrichment, a party must allege that the opposing party "received a benefit and that retention of that benefit without payment would be unjust." *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016) (quoting *Iliadis v. Wal–Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007)). "That quasi-contract doctrine also requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* (quoting *Iliadis*, 922 A.2d at 723). Plaintiff alleges that Defendants wrongfully retained "his compensation and retirement monies," which he "has worked his entire career to earn." Third Am. Compl. ¶¶ 112-14. Defendants counter that "Plaintiff has failed to allege the 'unjust' element of the claim of unjust enrichment" because the Employment Contract permitted Defendants to terminate Plaintiff with or without cause. Defs.' Br. at 37. They further submit that nothing in the Employment Contract "provides for continuation of salary in the event of such termination of employment." *Id.* at 37-38.

With respect to the Deferred Pension Supplement, Defendants' contention is directly contradicted by the plain language of the Employment Contract. Paragraph 4.B expressly prescribes that if Plaintiff's "employment is severed, regardless of cause of such severance, the Employee may elect to receive the retirement benefit as hereinabove provided, either as a monthly

benefit or as a lump sum payment." Answer & Countercls., Ex. A, D.E. 146-1 at 16. Accordingly, Plaintiff has plausibly alleged that Defendants' have unjustly retained that benefit following Plaintiff's termination. Less clear, however, is Plaintiff's entitlement to his salary for the duration of the five-year extension of the Employment Contract. Paragraph Seven provides that "[t]his Agreement shall be automatically extended for a five (5) year period unless either party serves on the other a written notice of termination at least ninety (90) days prior to December 31, 2005 or any December 31st occurring on a five (5) year anniversary of same." *Id.* at 20. Whether the parties intended for the renewal of the Employment Contract to guarantee a salary for the duration of the term must be fleshed out in discovery. After reviewing the Employment Contract in conjunction with the allegations in the Third Amended Complaint, the Court finds that Plaintiff has plausibly alleged an unjust enrichment claim.

Those findings equally apply to Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims. To state a breach of contract claim, Plaintiff must allege: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)). In addition to a contract's express terms, "[a] covenant of good faith and fair dealing is implied in every contract in New Jersey." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). "The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005) (quoting

*Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965)). "As a general rule, '[s]ubterfuges and evasions' in the performance of a contract violate the covenant of good faith and fair dealing 'even though the actor believes his conduct to be justified.'" *Id.* (alterations in original) (quoting *Restatement (Second) of Contracts*, § 205, cmt. d (1981)).

Here, Plaintiff alleges that Defendants breached the Employment Contract by withholding payment of his salary and the Deferred Pension Supplement. *See* Third Am. Compl. ¶¶ 37-38, 40, 116-17. He further avers that "a deliberate pre-judgment had been reached" regarding the alleged self-dealings and that Defendants froze his accounts to "exact injury upon the Plaintiff." *Id.* ¶¶ 47-48. In this Court's view, Plaintiff has plausibly alleged that Defendants breached the Employment Contract and implied covenant of good faith and fair dealing by reneging on his post-termination salary and contractual benefits.

Defendants nonetheless assert Plaintiff has failed to state a claim upon which relief may be granted because his self-dealings and ERISA violations constitute material breaches of the Employment Contract that "excuse Defendants from honoring provisions of Employment Agreements." Defs.' Br. at 38 (citing *Magnet Res., Inc. v. Summit MRI, Inc.*, 723 A.2d 976 (N.J. Sup. Ct. App. Div. 1998)). The Court is unpersuaded by that argument at this juncture of the case. "Whether conduct constitutes a breach and, if it does, whether the breach is material are ordinarily jury questions." *Magnet Res., Inc.*, 723 A.2d at 982. Accordingly, the Court denies Defendants' motion for judgment on the pleadings with respect to Counts Eight, Nine, and Twelve insofar as those Counts state a claim related to the Employment Contract.

### f. Count Thirteen: Fraudulent Concealment

Count Thirteen alleges fraudulent concealment of evidence under New Jersey law. *See* Third Am. Compl. ¶¶ 142-47. Plaintiff submits that Defendants destroyed evidence to prevent

Plaintiff from accessing documents that would have placed him "in a better position to answer the allegations raised by [Defendants] in [their] Counterclaim." *Id.* ¶¶ 145-46. Specifically, Plaintiff alleges that, immediately following his termination, certain documents "were deliberately shredded so that [he] would be unable to refer to these documents in connection with his defense to [Defendants'] allegations of 'self-dealing.'" *Id.* ¶ 66. According to Plaintiff, "[t]his has left [him] damaged in this action as he is now forced to rely on an evidential record that does not contain the evidence that [Defendants] destroyed." *Id.* ¶ 67.

The Court will dismiss Count Thirteen with prejudice for failure to state a claim upon which relief may be granted. The predicate act that gives rise to a fraudulent concealment claim under New Jersey law is spoliation: "the hiding or destroying of litigation evidence, generally by an adverse party." *Rosenbilt v. Zimmerman*, 766 A.2d 749, 754 (N.J. 2001). When spoliation occurs, the injured party may avail herself of various civil remedies depending upon the specific circumstances at issue. *See id.* Those remedies include an adverse inference; discovery sanctions such as the barring of admissible evidence or the dismissal of the action; or, as alleged here, a stand-alone cause of action for fraudulent concealment. *See id.* at 754-55. Whether a stand-alone claim is the appropriate remedy depends upon the identity of the spoliator, the timing of the alleged spoliation, and utility of the alternative sanctions. *See Robertet Flavors, Inc. v. Tri-Form Constr., Inc.*, 1 A.3d 658, 670-71 (N.J. 2010).

Where the spoliator is the party defending against a claim, the opposing litigant is permitted to either amend their pleading to bring a fraudulent concealment claim or institute a separate action. *See Rosenblit*, 766 A.2d at 757-58. "If, on the other hand, the spoliator is a plaintiff, the remedy of a separate cause of action for fraudulent concealment would not necessarily serve any purpose." *Robertet Flavors, Inc.*, 1 A.3d at 670 (citing *Hirsch v. Gen. Motors Corp.*, 628 A.2d

1108, 1119 (N.J. Sup. Ct. Law Div. 1993) (noting that the goal of "protect[ing] a litigant's interest [through] a prospective cause of action" does not apply when spoliation interferes with a party's ability to defend against a lawsuit)); *see also Fox v. Mercedes-Benz Credit Corp.*, 658 A.2d 732, 736 (N.J. Sup. Ct. App. Div. 1995) ("The concealment tort . . . is directed only at protecting prospective claims of plaintiffs. It is inapplicable to defendant's ability to defend a lawsuit. When plaintiffs have concealed evidence causing interference with discovery, the rules of court provide more than sufficient remedy." (internal citations omitted)). In declining to recognize a cause of action for the party defending against a claim, the New Jersey Supreme Court reasoned that the preclusion of the spoliator's evidence is generally the appropriate sanction. *Robertet Flavors, Inc.*, 1 A.3d at 671.

With respect to the timing of when discovery of the spoliation occurs, the New Jersey Supreme Court has noted that "[s]poliation that becomes apparent during discovery or trial often can be addressed effectively through the use of ordinary discovery sanctions, such as preclusion, or through adverse inferences." *Id.* (citing *Rosenblit*, 766 A.2d at 754-55). Finally, the New Jersey Supreme Court has emphasized that "the focus in selecting the proper sanction is 'evening the playing field,' or rectifying the prejudice caused by the spoliation so as to 'place[] the parties in equipoise.'" *Id.* (first quoting *Rosenblit*, 766 A.2d at 755; then quoting *Hirsch*, 628 A.2d at 1130).

Based on those principles, this Court holds that Plaintiff's fraudulent concealment claim cannot lie based on the alleged destruction of evidence that is material to Plaintiff's *defense* against the First Counterclaim. Accordingly, Count Thirteen is dismissed with prejudice because the claim is not legally cognizable under New Jersey law. That said, nothing precludes Plaintiff from exploring any perceived spoliation during discovery and availing himself of alternative remedies such as discovery sanctions by way of a spoliation motion.

\*　　\*　　\*

To recapitulate, the Court dismisses Counts Two, Three, Eleven, and Thirteen with prejudice for failure to state a claim upon which relief may be granted. The Court dismisses Counts Five, Six, Seven, Eight, Nine, Ten, and Twelve with prejudice insofar as those claims relate to the ERISA-governed benefit plans. The Court denies Defendants' motion for judgment on the pleadings as to Counts Eight, Nine, and Twelve insofar as those claims relate to the Employment Contract. The remaining claims are dismissed without prejudice to the filing of a motion to amend that addresses the deficiencies herein identified.

### 2. Partial Judgment on the First Counterclaim

Defendants also seek partial judgment in their favor on the First Counterclaim. *See* Defs.' Br. at 44-51; Answer & Countercls. ¶¶ 216-24. Based on Plaintiff's allegations in the Third Amended Complaint, the incorporated exhibits, and his briefing, Defendants submit that Plaintiff violated ERISA's fiduciary duty provisions by prematurely collecting his Base Pension and the Deferred Pension Supplement and by converting his earmarked Annuity Fund contributions to salary increases. *See* Answer & Countercls. ¶¶ 177-82; Defs.' Reply Br. at 1-5; Defs.' Sur-sur Reply Br. at 6-7, D.E. 168. By doing so, Defendants contend that "Plaintiff deprived the [Trustee Defendants] of their right and obligation to interpret the relevant Pension Plan Documents and the Employment Agreements." Defs.' Br. at 46. Defendants rely heavily on *LaScala v. Scrufari*, 479 F.3d 213, 221-22 (2d Cir. 2007) wherein the United States Court of Appeals for the Second Circuit held that the defendant, the plan administrator for certain welfare and pension funds, violated ERISA's fiduciary duty provisions by using his authority over plan assets to increase his compensation without trustee approval. *See* Defs.' Br. at 45-48 (stating that the decision "is directly on point").

Defendants submit that they are entitled to recoup Plaintiff's illicit profits from those transactions pursuant to Section 409 of ERISA. *Id.* ¶¶ 217-18. In the alternative, Defendants request this Court award them interim declaratory relief confirming their right to suspend the distribution of Plaintiff's Base Pension, Deferred Pension Supplement, and Annuity Fund account balance pending the resolution of this action. *See* Defs.' Br. at 50-51.

Although the facts in *LaScala* are analogous to the case at hand, this Court does not find the Second Circuit's decision to be persuasive for the purpose of resolving this Rule 12(c) motion. The Second Circuit's decision came *after* a bench trial wherein the district court judge elicited testimony from the parties, reviewed the parties' exhibits, and considered post-trial submissions. *See LaScala v. Scrufari*, 330 F. Supp. 2d 236, 238-41 (W.D.N.Y. 2004). To prevail at this stage of the litigation on a Rule 12(c) motion, in contrast, Defendants must unequivocally prove that Plaintiff's pleading admits the essential facts underlying Defendants' counterclaim. *See Lake*, 54 F. Supp. 3d at 334. Given that this Court must provide Plaintiff an opportunity to attempt to correct the deficiencies in the Third Amended Complaint, "any judgment 'on the pleadings' would be a contingent one, subject to vitiation by an amended pleading that puts the issue of breach [of fiduciary duties] back in play." *Churchill Downs, Inc.*, 2015 WL 5854134, at *10 (noting that "[i]t would be an unusual case where the admissions of the [responsive pleading] disposed of the merits, leaving nothing for discovery"). Accordingly, the Court is constrained to deny the motion. Whether Plaintiff's conduct violated ERISA's fiduciary duty provisions may be revisited following any attempt by Plaintiff to amend the complaint or on a fuller record at the close of discovery. [13]

---

[13] The Court likewise finds Defendants' remaining legal authority to be inapposite. Each case was decided on summary judgment or after a bench trial. *See, e.g.*, *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 883 (9th Cir. 2019) (reviewing the district court's order granting the Department

The Court will also decline to order the suspension of Plaintiffs' Base Pension, the Deferred Pension Supplement, and Annuity Fund account balance pending the resolution of this matter. Defendants rely on Section 206(d)(4) of ERISA, which provides an exception to the general rule that benefits provided under an ERISA plan "may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Section 206(d)(4) prescribes that the non-alienation rule "shall not apply to any offset of a participant's benefits . . . against an amount that the participant is ordered or required to pay to the plan" pursuant to, *inter alia*, a judgment of conviction for a crime involving an ERISA plan or "a civil judgment . . . entered by a court in an action brought in connection with a violation (or alleged violation)" of ERISA's fiduciary duty provisions. *Id.* § 1056(d)(4).

Because the Court cannot conclusively determine that Plaintiff breached his fiduciary duties on this record, this Court cannot enter an order confirming Defendants' right to suspend distribution of Plaintiff's benefit accounts. Defendants' cited authority in support of suspending Plaintiff's benefits is distinguishable because the request in that case came on a motion for partial summary judgment at which time the court conclusively determined that the defendant breached his fiduciary duties to the plan. *See Pension & Employee Stock Ownership Plan Admin. Comm. of Cmty. Bancshares, Inc., o/b/o Cmty. Bancshares, Inc. v. Patterson*, 547 F. Supp. 2d 1230, 1253 (N.D. Ala. 2008).

---

of Labor's motion for partial summary judgment as to liability under Section 406 for self-dealing); *Gilliam v. Edwards*, 492 F. Supp. 1255, 1257 (D.N.J. 1980) (setting forth findings of fact and conclusions of law after the conclusion of a bench trial).

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion

for Judgment on the Pleadings. An appropriate order will follow.

**Dated: December 18, 2019**

*s/ Michael A. Hammer*
**United States Magistrate Judge**
